BRENDA GIL ENSEÑAT, demandante y recurrida, *v.* ORLANDO MARINI ROMÁN, demandado y peticionario.

Número: CC-2003-773 Resuelto: 18 de abril de 2006

*Ariel O. Caro Pérez* y *Arnaldo Castro Callejo,* abogados de la parte peticionaria; *Francisco J. Rivera Álvarez* y *Marisel Peña Senati,* abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal

Los hechos del presente caso, sobre los cuales no existe controversia, evidencian que el 2 de mayo de 1995 Brenda Haydeé Gil Enseñat y Orlando Marini Román otorgaron capitulaciones matrimoniales, mediante la Escritura Pública Núm. 47 ante el notario público Edwin S. Miranda Hernández; ello con el propósito de establecer que su matrimonio se regiría por la total separación de bienes. Al momento del referido otorgamiento, Marini Román contaba con treinta y ocho años de edad. Por su parte, Gil Enseñat era menor de edad —contaba con diecinueve años— y no estaba emancipada.(¹)

La madre de Gil Enseñat, Alma I. Enseñat Planell —quien tenía la custodia sobre ella y compartía la patria potestad con el padre de la referida menor— compareció al antes mencionado otorgamiento y firmó la escritura pública sobre capitulaciones.(²) No obstante, el padre de Gil Enseñat, Fernando A. Gil Guerra, *no* compareció al referido otorgamiento, aun cuando, repetimos, también ejercía la patria potestad sobre la menor.(³)

Cuatro días más tarde, el 6 de mayo de 1995, Gil Enseñat y Marini Román contrajeron nupcias, acto al cual con-

---

(¹) Gil Enseñat nació el 6 de marzo de 1976 en Mayagüez, Puerto Rico.

(²) En la escritura se estableció la comparecencia y el consentimiento de la madre de la forma siguiente:

"QUINTO: La compareciente, doña Alma Ibelisa Enseñat Planell, madre con patria potestad y custodia sobre la menor contratante, Brenda Haydeé Gil Enseñat, *comparece en esta escritura a los únicos fines de dar su consentimiento expreso al otorgamiento de la presente escritura por parte de su hija menor y manifiesta estar plenamente de acuerdo con las capitulaciones aquí acordadas.*" (Énfasis suplido.) Apéndice, pág. 73.

(³) Es preciso señalar que el vínculo matrimonial que unía a los padres de Gil Enseñat quedó disuelto mediante una Sentencia de 26 de abril de 1982, dictada por el antiguo Tribunal Superior de Mayagüez, en un procedimiento por consentimiento mutuo. Por la referida sentencia, la custodia de Gil Enseñat y su hermano le fue adjudicada a su madre, mientras que la *patria potestad sería compartida por ambos progenitores.*

currieron los dos progenitores de la menor.([4]) Aproximadamente cuatro años más tarde, la pareja presentó ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Aguadilla, una petición de divorcio por la causal de consentimiento mutuo. Mediante Sentencia de 24 de marzo de 1999, el referido foro primario declaró roto y disuelto el vínculo matrimonial existente entre las partes por la referida causal. Además de hacer constar que durante el matrimonio no se procrearon hijos, el tribunal de instancia determinó que las partes no tenían bienes gananciales, ya que habían otorgado capitulaciones matrimoniales previo a su boda.([5])

Posteriormente, el 31 de octubre de 2002 Gil Enseñat presentó ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, una demanda, sobre sentencia declaratoria y división de bienes, para impugnar la validez de las antes mencionadas capitulaciones matrimoniales. Alegó, en síntesis, que las capitulaciones matrimoniales eran radicalmente nulas, *ya que, conforme al Art. 1270 del Código Civil, 31 L.P.R.A. sec. 3554, era necesario que ambos padres con patria potestad comparecieran a su otorgamiento*; argumentó que, al no mediar el consentimiento de su padre, las capitulaciones eran inválidas, por lo cual se constituyó durante el matrimonio una Sociedad Legal de Gananciales, cuyos bienes aún no habían sido divididos. En virtud de lo anterior, Gil Enseñat solicitó que se reconociera la existencia de una Sociedad Legal de Gananciales mientras existió el matrimonio y que se ordenara la división de la alegada comunidad.

Marini Román presentó ante el foro primario una moción de sentencia sumaria a su favor en la que alegó, en síntesis, que la demanda estaba prescrita. A esos efectos, argumentó que la incomparecencia del padre de Gil Enseñat constituyó un evento que no viciaba de nulidad radical

---

([4]) Posteriormente, el 6 de marzo de 1997 —estando casada— Gil Enseñat cumplió 21 años.

([5]) La referida sentencia no fue apelada, por lo cual advino final y firme.

las capitulaciones matrimoniales, *sino que meramente las hacía anulables.* Señaló que eran meramente anulables las capitulaciones de un menor en las que no concurrieran sus representantes legales y que el documento tenía validez hasta que no fuera impugnado. Cónsono con ello, señaló que por ser meramente anulables las capitulaciones, cualquier acción de impugnación tenía que presentarse, conforme al Art. 1253 del Código Civil, 31 L.P.R.A. sec. 3512,[6] dentro del término de cuatro años desde que Gil Enseñat advino a la mayoría de edad. Puesto que Gil Enseñat había presentado la demanda fuera del antes mencionado término, alegó que la causa de acción estaba prescrita.

Gil Enseñat presentó una moción de sentencia sumaria a su favor. Señaló, nuevamente, que la incomparecencia de su padre producía la nulidad radical de las capitulaciones. Conforme a ello, alegó que si no se cumplía con el requisito de la concurrencia de ambos padres con patria potestad, no había consentimiento, por lo cual el contrato no existía. A esos efectos, argumentó que ya que las capitulaciones eran radicalmente nulas, no existía un término para impugnarlas.

Luego de varios trámites e incidentes procesales, el tribunal de primera instancia emitió una sentencia sumaria a favor de Marini Román. Concluyó que el consentimiento dado por la madre de Gil Enseñat era suficiente para completar la capacidad de la menor. Al fundamentar su determinación, el referido foro prestó especial atención al hecho de que los padres estaban separados por sentencia de divorcio y sólo la madre ostentaba la custodia de la menor.

El tribunal de instancia resolvió, además, que por ser las capitulaciones matrimoniales un contrato celebrado en-

---

(6) El Art. 1253 del Código Civil, 31 L.P.R.A. sec. 3512, establece, en lo aquí pertinente, lo siguiente:

"La acción de nulidad sólo durará cuatro (4) años.

"Este tiempo empezará a correr:

"… cuando se refiera a los contratos celebrados por los menores o incapacitados, desde que salieren de tutela."

tre aquellos que han decidido unirse en matrimonio, le aplicaban las normas generales de los contratos estableci-das en el Código Civil. En virtud de lo anterior, señaló que los contratos otorgados por menores no emancipados —pero que tienen discernimiento— son contratos existen-tes, aunque estén viciados y se hallen expuestos durante cuatro años a la acción de anulabilidad o de impugnación. Así pues, concluyó que conforme lo dispone el Art. 1253, ante, dicho término de cuatro años comenzó a transcurrir desde que Gil Enseñat alcanzó la mayoría de edad. Ex-presó que un contrato otorgado por un menor de edad que tenga edad suficiente como para tener uso de razón y ca-pacidad para discernir no es nulo, sino meramente anulable.

A tales efectos, determinó que las capitulaciones aquí en controversia eran meramente anulables, cuyo término para impugnación era de tan sólo cuatro años. Entendió el referido foro que, como Gil Enseñat tenía diecinueve años al contraer matrimonio, tenía la suficiente capacidad para discernir y comprender la naturaleza de sus actos al mo-mento en que suscribió la escritura de capitulaciones matrimoniales. Señaló que al ser anulables las capitulacio-nes, Gil Enseñat tenía cuatro años a partir de su mayoría de edad —es decir, desde el 6 de marzo de 1997— para impugnar, lo cual no hizo. Por último, determinó que ya que las partes se divorciaron por mutuo acuerdo y Gil En-señat no cuestionó entonces las capitulaciones, ésta no po-día ir contra sus propios actos. En virtud de lo anterior, declaró "con lugar" la moción de sentencia sumaria presen-tada por la parte demandada y, en consecuencia, desestimó con perjuicio la demanda.

Inconforme con tal determinación, Gil Enseñat acudió, mediante un recurso de apelación, al entonces Tribunal de Circuito de Apelaciones. Alegó, en síntesis, que erró el foro primario al determinar que eran válidas las capitulacio-nes, ya que faltó el consentimiento de su padre. Argumentó que había errado el foro de instancia al aplicar la norma de los contratos celebrados por los menores para determinar

la validez de las capitulaciones matrimoniales en este caso; al resolver que las normas generales establecidas en el Código Civil sobre los contratos aplicaban a las capitulaciones matrimoniales, en contravención a la disposición legal específica sobre las capitulaciones matrimoniales; al resolver que una menor de diecinueve años tenía la suficiente capacidad para discernir y comprender la naturaleza del contrato de capitulaciones matrimoniales, y al resolver que las capitulaciones matrimoniales eran anulables y que la menor otorgante tenía cuatro años a partir de su mayoría de edad para impugnarlas.

Tras varios trámites procesales, y luego de celebrar una vista oral, el foro apelativo intermedio dictó sentencia *revocatoria* de la emitida por el Tribunal de Primera Instancia. Resolvió que la incomparecencia de un padre con patria potestad en el otorgamiento de las capitulaciones de su hija de diecinueve años, anulaba radicalmente el acto jurídico. Conforme a lo anterior, concluyó que era inválido el contrato sobre las capitulaciones matrimoniales entre las partes, por lo cual sus relaciones económicas se rigieron por el régimen ganancial. En virtud de lo anterior, devolvió el caso al foro primario para la división de la comunidad de bienes existente entre las partes.

Insatisfecho con tal determinación, el 30 de septiembre de 2003 Marini Román acudió —vía *certiorari*— a este Tribunal. Adujo que incidió el foro apelativo intermedio al

> ... concluir que la incomparecencia del padre con patria potestad compartida por decreto judicial en la escritura de capitulaciones matrimoniales de su hija de 19 años de edad produce nulidad radical del negocio jurídico.
> ... no concluir que la incomparecencia del padre con patria potestad compartida por decreto judicial en la escritura de capitulaciones matrimoniales de su hija de 19 años de edad sólo anulaba el negocio jurídico.
> ... no concluir que la recurrida ratificó el negocio jurídico cuando advino a la mayoridad.
> ... no concluir que la demanda estaba prescrita por haber expirado el plazo de la acción de anulabilidad de la recurrida.
> Petición de *certiorari*, págs. 5–6.

*Expedimos el recurso.* Contando con la comparecencia de ambas partes y estando en posición de resolverlo, procedemos a hacerlo. *Confirmamos*; veamos por qué.

I

Por estar íntimamente relacionados entre sí, analizamos y discutimos los señalamientos de error en conjunto. De entrada, nos corresponde determinar cuál es el tipo de ineficacia que produce la incomparecencia de una de las personas designadas y autorizadas por el Art. 1270 de nuestro Código Civil, ante, al otorgamiento de las capitulaciones matrimoniales de un menor de edad. Es decir, debemos resolver si unas capitulaciones matrimoniales otorgadas por un menor de edad, sin la concurrencia y firma de uno de sus padres con patria potestad, son radicalmente nulas o meramente anulables.

■ Como es sabido, nuestro ordenamiento jurídico permite que las personas que desean casarse seleccionen el régimen económico que habrá de regir su futuro matrimonio. En virtud de lo anterior, este Tribunal ha señalado que "los futuros cónyuges pueden pactar en capitulaciones matrimoniales el régimen económico que entiendan procedente y conveniente". *Maldonado v. Cruz*, 161 D.P.R. 1, 15 (2004). Véanse, además: *Domínguez Maldonado v. E.L.A.*, 137 D.P.R. 954, 959 (1995); *Vilariño Martínez v. Registrador*, 88 D.P.R. 288, 292 (1963).

■ A esos efectos, el Art. 1267 del Código Civil, 31 L.P.R.A. sec. 3551, establece que "[l]os que se unan en matrimonio podrán otorgar sus capitulaciones antes de celebrarlo, estipulando las condiciones de la sociedad conyugal relativa a los bienes presentes y futuros ...". De igual forma, el referido artículo de ley establece que a falta de capitulaciones, o cuando éstas sean nulas o insuficientes, los cónyuges se casan bajo el régimen supletorio de la sociedad de gananciales. *Maldonado v. Cruz*, ante; *Vilariño Martínez v. Registrador*, ante, pág. 292.

■ Es preciso señalar que a pesar de que las antes mencionadas capitulaciones "constituyen un contrato sujeto al régimen de libertad que impera en nuestro sistema de contratación, la autonomía de la voluntad de las partes no es absoluta". *Ab Intestato Saldaña Candelario*, 126 D.P.R. 640, 643 (1990). Véanse, además: *Maldonado v. Cruz*, ante; *Domínguez v. E.L.A.*, ante, págs. 959–960; *Umpierre v. Torres Díaz*, 114 D.P.R. 449, 459 (1983); *Vilariño Martínez v. Registrador*, ante, pág. 293. En virtud de lo anterior, los otorgantes de las capitulaciones no pueden estipular nada que sea contrario a las leyes o a las buenas costumbres, "ni depresivo de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges". Art. 1268 del Código Civil, 31 L.P.R.A. sec. 3552.

■ En lo que respecta a las formas y solemnidades que nuestro ordenamiento jurídico exige para este tipo de contrato, el Art. 1273 del Código Civil, 31 L.P.R.A. sec. 3557, establece, en lo aquí pertinente, que "[l]as capitulaciones matrimoniales y las modificaciones que se hagan en ellas habrán de constar en escritura pública, otorgada antes de la celebración del matrimonio". Al respecto, este Tribunal ha señalado que la validez del contrato de capitulaciones depende de dos supuestos básicos: (1) que conste en escritura pública y (2) que hayan sido otorgadas antes de la celebración del matrimonio. *Maldonado v. Cruz*, ante. Es preciso destacar que los antes mencionados requisitos son supuestos generales que aplican al otorgamiento de todas las capitulaciones.

■ "En cuanto al primero de estos supuestos, se ha entendido que se trata de un requisito de forma *ad solemnitatem* del cual depende la existencia y validez misma de las capitulaciones". *Maldonado v. Cruz*, ante, pág. 18, citando a J. Santos Briz, *Derecho Civil: Teoría y Práctica*, Madrid, Ed. Rev. Der. Privado, 1982, T. V, pág. 127. Así pues, las capitulaciones matrimoniales que no consten en escritura pública carecerán de validez y eficacia pues, según se ha entendido, estamos ante una condición para la

existencia de la escritura y no ante un mero requisito de forma. Íd., citando a J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, pág. 141.

■ Por otra parte, la exigencia de que las capitulaciones sean otorgadas antes de contraído el matrimonio es parte de una máxima que ha sido denominada como "la doctrina de inmutabilidad de las capitulaciones". La referida doctrina surge en virtud de las disposiciones del antes mencionado Art. 1267 y las del Art. 1272 de nuestro Código Civil, 31 L.P.R.A. sec. 3556, el cual establece que luego de celebrado un matrimonio "no se podrán alterar las capitulaciones otorgadas ...". *Maldonado v. Cruz*, ante, pág. 18. Véanse: *Domínguez Maldonado v. E.L.A.*, ante, pág. 961; *Vilariño Martínez v. Registrador*, ante, pág. 293. Véase, además, R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Pubs. JTS, 2000, T. I, Sec. 6.2[3], pág. 256.

■ Este Tribunal ha reconocido que la antes mencionada doctrina —o prohibición de variar las capitulaciones— "ha caído en desuso y ha sido abolida en los más modernos códigos". *Umpierre v. Torres Díaz*, ante, pág. 457. Véase, además, *Domínguez Maldonado v. E.L.A*, ante, pág. 962. *No obstante lo anterior*, hemos destacado que es nuestra Asamblea Legislativa a la que le corresponde modificar la referida situación. Puesto que —contrario a las nuevas tendencias en las jurisdicciones civilistas— nuestra Legislatura no ha tomado acción para acoger el principio de mutabilidad, *esta prohibición continúa vigente en nuestro ordenamiento jurídico. Domínguez Maldonado v. E.L.A*, ante, pág. 963.

■ Con respecto a las capitulaciones matrimoniales, hemos establecido que son "de primordial importancia en el ámbito de la relación patrimonial del matrimonio, en la medida en que permite[n] regular los derechos de los esposos sobre sus bienes respectivos; los intereses de los hijos y de la familia; los intereses de los terceros que contratan con uno u otro de los esposos, y en definitiva, el interés

social del matrimonio". *Maldonado v. Cruz*, ante, págs. 15-16, citando a *Domínguez Maldonado v. E.L.A.*, ante, pág. 960.

De tal magnitud es su importancia que nuestro Código Civil permite —con ciertos requisitos— que hasta los menores de edad que vayan a casarse puedan establecer capitulaciones matrimoniales. E. Meléndez, *Lecciones de Derecho de Familia*, Río Piedras, Ed. U.P.R., 1976, págs. 202–203.

A tales efectos, el Art. 1270 del Código Civil, ante, específicamente faculta a los menores de edad a otorgar capitulaciones matrimoniales y establece los requisitos para la validez del referido otorgamiento. La referida disposición estatutaria establece que "[e]l menor, que con arreglo a la ley pueda casarse,[7] podrá también otorgar sus capitulaciones matrimoniales; *pero únicamente serán válidas si a su otorgamiento concurren las personas designadas en la misma ley para dar el consentimiento al menor a fin de contraer matrimonio*". (Énfasis suplido.)

Resulta importante *enfatizar* que la referida disposición estatutaria dispone en su *segundo* párrafo que "[e]n el caso de que las capitulaciones fuesen nulas *por carecer del concurso y firma de las personas referidas* y de ser válido el matrimonio con arreglo a la ley, se entenderá que el menor lo ha contraído bajo el régimen de la sociedad de gananciales". (Énfasis suplido.) Art. 1270 del Código Civil, ante.

Respecto a la disposición estatutaria antes mencionada, enfrentamos y contestamos dos interrogantes. Primero, debemos determinar quiénes son los sujetos llamados a concurrir al otorgamiento de las capitulaciones matrimoniales efectuadas por un menor. De otra parte, es preciso estable-

---

[7] Como norma general en nuestro ordenamiento, los menores que pueden contraer matrimonio —conforme al Art. 70 del Código Civil, 31 L.P.R.A. sec. 232— son aquellos varones mayores de 18 años y las mujeres de 16 años que cuenten con el correspondiente permiso. En el presente caso, *no está en controversia que Gil Enseñat estaba capacitada para contraer matrimonio*.

cer cuáles son las consecuencias de la incomparecencia de alguna de estas personas designadas en ley. Veamos.

■■■ Como señaláramos, conforme al referido Art. 1270 del Código Civil, ante, las personas llamadas a concurrir al otorgamiento de las capitulaciones de un menor *son las mismas personas designadas por ley para brindar el consentimiento a los menores para contraer matrimonio.* A tales efectos, el Art. 74 del Código Civil, 31 L.P.R.A. sec. 242, establece como norma general, en lo aquí pertinente, que "[l]os menores de veintiún (21) años necesitan para contraer matrimonio *el permiso de las personas que los tengan bajo su patria potestad* o tutela ...". Surge de lo anterior, *que los padres con patria potestad sobre sus hijos son las personas llamadas por ley a consentir al matrimonio de éstos.*

■■■■ Como es sabido, "la patria potestad es el conjunto de derechos y deberes que tienen los padres respecto a la persona y los bienes de sus hijos menores de edad no emancipados". *Chévere v. Levis*, 150 D.P.R. 525, 537 (2000). Véase *Torres, Ex parte*, 118 D.P.R. 469, 474 (1987). Esta "es una de las instituciones legales más importantes en relación [con] los menores". Exposición de Motivos, Ley Núm. 99 de 2 de junio de 1976, Leyes de Puerto Rico, pág. 312. Esto es así ya que los padres con patria potestad tienen el derecho de tomar decisiones esenciales y primordiales en la vida de sus hijos menores de edad. Cónsono con lo anterior, este Tribunal ha señalado que son amplios los deberes y las facultades que el ejercicio de la patria potestad impone sobre los padres. Entre éstos se encuentra, como indicamos anteriormente, el de consentir al matrimonio de sus hijos menores de edad no emancipados. *Torres, Ex parte*, ante, págs. 474–475.

Anteriormente nuestro ordenamiento establecía que la patria potestad correspondía, en primer término, al padre y sólo recaía sobre la madre en caso de la muerte de éste o en casos excepcionales. *López y otros v. Porrata y otros*, 156 D.P.R. 503 (2002); *Sánchez Cruz v. Torres Figueroa*, 123

D.P.R. 418, 424 (1989). Véase además C.J. Irrizary Yunqué, *Responsabilidad Civil Extracontractual*, 4ta ed., San Juan, edición de autor, 2002, pág. 553.

No obstante lo anterior, en 1976 la Asamblea Legislativa aprobó varias leyes para dar a ambos padres iguales derechos y obligaciones sobre sus hijos menores de edad. Entre éstas se encuentra la Ley Núm. 99, ante. En específico, esta pieza legislativa enmendó el Art. 152 del Código Civil, 31 L.P.R.A. sec. 591, para equiparar el derecho de ambos progenitores a la patria potestad de sus hijos. *Sánchez Cruz v. Torres Figueroa*, ante. De esta forma, la Legislatura consideró que el bienestar del menor quedaba mucho más protegido si se requería el consentimiento de ambos padres para tomar decisiones importantes con relación al menor. Esto evitaba que, por capricho de uno solo de los padres, pudiera perjudicarse el menor. Exposición de Motivos, Ley Núm. 99, ante, 1976 Leyes de Puerto Rico 313.

A raíz de lo anterior, el referido artículo de ley actualmente establece que, *como norma general*, la patria potestad sobre los hijos no emancipados recae *conjuntamente* sobre ambos padres. *Chévere v. Levis*, ante. Añade el referido artículo que, de forma excepcional, uno solo de los padres podrá ejercer la patria potestad: (1) cuando el otro haya muerto, se encuentre ausente o esté legalmente impedido, o (2) cuando sólo uno de éstos haya reconocido o adoptado al menor. Íd.

De igual forma, en ese mismo año la Asamblea Legislativa aprobó la Ley Núm. 100 de 2 de junio de 1976, para enmendar el Art. 107 del Código Civil, 31 L.P.R.A. sec. 383;[8] ello con el propósito de que se eliminara todo lo relacionado

---

[8] En específico, el Art. 107 (31 L.P.R.A. sec. 383) dispone, en lo aquí pertinente:

"En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos."

a la culpabilidad de cualquiera de los cónyuges al momento de adjudicar la patria potestad y custodia, y que en su lugar se estableciera como norma el bienestar y los mejores intereses del menor. *Chévere v. Levis*, ante, pág. 538 esc. 7; *Sánchez Cruz v. Torres Figueroa*, ante, pág. 424; *Torres, Ex parte*, ante, págs. 477–478. Antes de la enmienda, en los casos de divorcio, se le adjudicaba la patria potestad al cónyuge que resultara inocente.

En virtud de la referida enmienda, actualmente (incluso en casos de divorcio) este Tribunal ha determinado que ambos padres —como en el presente caso— pueden mantener la patria potestad sobre el menor, aun cuando la custodia sólo recaiga sobre uno de los cónyuges, siempre que corresponda a los mejores intereses del menor. *Sánchez Cruz v. Torres Figueroa*, ante, pág. 424; *Torres, Ex parte*, ante.

La aprobación de la Ley Núm. 1 de 27 de mayo de 1980 resulta de particular pertinencia a la controversia ante nuestra consideración. Por virtud de esta ley, la Asamblea Legislativa enmendó el antes mencionado Art. 152 del Código Civil para establecer expresamente que "[t]odo hospital público o privado aceptará el consentimiento de cualquiera de los padres con patria potestad sobre los hijos no emancipados en casos de tratamiento médico y operaciones de emergencia ordenadas por algún facultativo autorizado". Exposición de Motivos, Ley Núm. 1, ante, 1980 Leyes de Puerto Rico 907. Al aprobar el referido estatuto, la Asamblea Legislativa expresamente estableció que ya que la patria potestad era compartida por ambos cónyuges, mientras se sostuviera el matrimonio y aún después del divorcio, resultaba deseable que se requiriera únicamente que uno de los padres tuviera que consentir a las intervenciones médicas antes señaladas. Exposición de Motivos, Ley Núm. 1, ante.

En vista de lo anterior, no tenemos la menor duda de que si el legislador hubiese tenido la intención de establecer que, en casos como el que hoy nos ocupa, bas-

tara con la comparecencia de uno sólo de los padres con patria potestad sobre un menor emancipado, *así lo hubiese establecido como lo hizo en la antes mencionada situación.* No lo hizo. Al no sufrir alteración alguna el Art. 1270, ante, permanece inalterado el requisito de que las personas que tienen que consentir al matrimonio, es decir, las personas con patria potestad sobre el menor, tengan que concurrir al otorgamiento de las capitulaciones.

En el presente caso, correspondía a *ambos* progenitores de Gil Enseñat —quienes compartían la patria potestad sobre ella— comparecer al otorgamiento de las capitulaciones matrimoniales de su hija. Ahora bien, lo anterior *no* dispone totalmente del caso ante nuestra consideración. Debemos determinar el tipo de nulidad que produce la ausencia del padre de Gil Enseñat al referido acto, a saber, si las capitulaciones son nulas o meramente anulables.

## II

Alega, en síntesis, el peticionario Marini Román que unas capitulaciones otorgadas por un menor, sin el concurso de uno de sus padres con patria potestad, no son radicalmente nulas, sino meramente anulables. A su entender, la doctrina civilista española mayoritaria apoya la referida conclusión. *No le asiste la razón.*

Es preciso destacar que el Art. 1270 de nuestro Código Civil, ante, proviene del antiguo Art. 1.318 del Código Civil español, el cual disponía exactamente lo mismo.[9] *Domínguez Maldonado v. E.L.A.*, ante, pág. 962.

---

[9] Es preciso destacar que el Código Civil español, a diferencia del nuestro, *no* fue modificado para establecer que la patria potestad sería compartida entre ambos cónyuges hasta que, conforme a la reforma de familia, fue enmendado. Es decir, específicamente los tratadistas jamás tuvieron ante sí la interrogante de cuál sería el tipo de ineficacia que produciría la ausencia de uno de los padres con patria potestad sobre un menor de edad, ya que conforme al ordenamiento jurídico español, sólo podía recurrir una persona al otorgamiento de las capitulaciones matrimoniales otorgadas por un menor de edad, a saber, si se trataba de hijos legítimos, tenía que concurrir al referido acto, en primer término, el padre; si éste faltaba o si se hallaba impedido, recurriría en orden sucesivo la madre, el abuelo paterno, el abuelo materno, la abuela paterna o materna y, en su defecto, el consejo de familia.

El referido artículo español fue enmendado como parte de la reforma de leyes que regulan a las personas y la familia. En específico, fue en virtud de la Ley de 2 de mayo de 1975 que se abolió en España la inmutabilidad de las capitulaciones. *Domínguez Maldonado v. E.L.A.*, ante, pág. 962; *Umpierre v. Torres Díaz*, ante, pág. 458. Véanse, a esos efectos: Santos Briz, *op. cit.*, pág. 125; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, Madrid, Ed. Tecnos, 1978, Vol. IV, pág 151; J. Castán Tobeñas, *Derecho civil español, común y foral*, 9na ed., Madrid, Ed. Reus, 1976, T. V, Vol. I, pág. 305.

Como consecuencia de la aprobación de la Ley de 13 de mayo de 1981, el Art. 1.318 del Código Civil español fue enmendado y convertido en el Art. 1.329. Este artículo tiene la peculiaridad de que autoriza al menor de edad a otorgar capitulaciones matrimoniales en cualquier momento y otorgarlas sin la comparecencia de persona alguna, si únicamente se limita a pactar en éstas el régimen de separación o participación.[10]

Acorde con las antes mencionadas enmiendas, la doctrina civilista española más moderna entiende que, ante la incomparecencia de una de las personas designadas en ley para concurrir al otorgamiento de las capitulaciones matrimoniales, no se debe hablar de nulidad, sino de anulabilidad. M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1978, T. XVIII, Vol. 1, pág. 50. Véase, además, J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Bosch, 1985, T. IV, pág. 117.

Ahora bien, por considerar que en nuestro ordenamiento jurídico *aún rige la doctrina de la inmutabilidad de las capitulaciones*, haremos alusión *únicamente* a aquella

---

[10] Específicamente, el nuevo Art. 1.329 del código español dispone, en lo aquí pertinente, que "[e]l menor que con arreglo a la ley pueda casarse podrá otorgar capitulaciones matrimoniales antes o después de la boda, pero necesitará el concurso y consentimiento de sus padres o tutor, salvo que se limite a pactar el régimen de separación o participación". *Código Civil*, 8va ed., Madrid, Ed. Civitas, 1984, pág. 309.

doctrina que analiza el articulado español antes de aprobadas las mencionadas enmiendas.

 A. Como es sabido, en nuestro ordenamiento jurídico los menores no emancipados, como norma general, no tienen capacidad para contratar. Sin embargo, el Art. 1270 de nuestro Código Civil, ante, les permite otorgar capitulaciones matrimoniales. Manresa y Navarro, *op. cit.*, pág. 162. Ciertamente, esta autorización de la Legislatura representa una excepción a la norma general antes mencionada. Art. 1215 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3402; Manresa y Navarro, *op. cit.*, pág. 162. Véase, además, Albaladejo, *op. cit.*, pág. 49 esc. 5.

Como bien expresa Castán Tobeñas, "[n]o puede el Derecho exigir para el otorgamiento de capitulaciones matrimoniales la capacidad plena del mayor de edad, puesto que pudiendo el menor [a partir de ciertas edades] contraer matrimonio, sería absurdo se le privara del derecho a regular la organización económica de la familia que va a crear". Castán Tobeñas, *op. cit.*, págs. 306–307.

No obstante lo anterior, se ha señalado que "para hacer la excepción menos violenta, [el legislador] ha creído conveniente establecer un *suplemento de capacidad*, exigiendo para la validez de las capitulaciones del menor de edad la concurrencia de las personas mismas que han de dar su consentimiento para el matrimonio". (Énfasis suplido.) Castán Tobeñas, *op. cit.*, pág. 308. Véase, además, Puig Brutau, *op. cit.*, 1967, T. IV, Vol. 1, pág. 402. En igual sentido, expresa Manresa y Navarro que "esa excepción no puede ser tan radical que consienta que los interesados menores de edad, por sí solos, estipulen las condiciones que a bien tengan en sus capitulaciones matrimoniales, se hagan mutuas donaciones, aun de bienes inmuebles, constituyan hipotecas y realicen otros actos trascendentales e irrevocables". Manresa y Navarro, *op. cit.*, pág. 163. Indudablemente, eso "[s]ería fiarlo todo a la inexperiencia, apasionamiento y falta de reflexión de los jóvenes esposos, que

más tarde no podrían ya enmendar los yerros cometidos". Manresa y Navarro, *op. cit.*, pág. 163.

■ Es en virtud de lo anterior que se requiere la comparecencia de ciertas personas designadas en ley para el otorgamiento de las capitulaciones matrimoniales. Ahora bien, cuando concurren estas personas al otorgamiento de las capitulaciones, no lo hacen en concepto de parte, sino para *completar la capacidad* de los verdaderos otorgantes, los cuales son siempre los futuros esposos, aun cuando sean menores de edad. Albaladejo, *op. cit.*, pág. 48. Véanse, además: Ortega-Vélez, *op. cit.*, Sec. 6.2[8], págs. 263–264; J.L. Lacruz Berdejo y F.A. Sancho Rebudilla, *Derecho de Familia*, Barcelona, Librería Bosch, 1966, pág. 119. *Es decir, los menores de edad son los otorgantes en el referido contrato.* Albadalejo, *op. cit.*; M. Peña Bernaldo de Quirós, *Notas a la Sentencia del Tribunal Supremo de 1 de julio de 1955*, 9 An. Der. Civ. 310 (1956).

■ Esto es, en lugar de intervenir los padres con patria potestad "solamente representando a los menores, contratando por ellos y para ellos, intervienen, asisten o concurren con los mismos menores, completando su personalidad, y así, atendiendo a los deseos de los futuros esposos, les dan la forma más conveniente y adecuada, salvando con su experiencia los peligros que pudieran resultar". Q.M. Scaevola, *Código Civil*, 2da ed., Madrid, Ed. Reus, 1967, T. XXI, pág. 208.

■ Puig Brutau señala que la capitulación es un acto personalísimo, aunque no lo declara expresamente ningún precepto, porque "ello se deduce del hecho de concederse al menor capacidad para otorgar por sí los capítulos, excluyendo la sustitución por el representante legal, y en general de la naturaleza familiar de estos pactos y su accesoriedad al matrimonio". Puig Brutau, *op. cit.*, pág. 400. Véase Manresa y Navarro, *op. cit.*, pág. 163.

■ Nos señala Puig Brutau que las capitulaciones otorgadas por los menores de edad tienen dos característi-

cas particulares, a saber, "pueden prestar el consentimiento los menores aunque no estén emancipados ... es decir, contratan ellos mismos y no por medio de sus representantes legales; y el complemento de su capacidad lo obtienen con la asistencia, no de estos representantes, sino de las indicadas personas". Puig Brutau, *op. cit.*, pág. 402.

 Ahora bien, y como mencionamos anteriormente, el Art. 1270 de nuestro Código Civil, ante, dispone que únicamente serán válidas las capitulaciones matrimoniales de un menor de edad si a su otorgamiento concurren las personas designadas en la misma ley para dar el consentimiento al menor para contraer matrimonio. A su vez, dispone que "[e]n el caso de que las capitulaciones fuesen nulas *por carecer del concurso y firma de las personas referidas* y de ser válido el matrimonio con arreglo a la ley, se entenderá que el menor lo ha contraído bajo el régimen de la sociedad de gananciales". (Énfasis suplido.)

Por lo tanto, si no se cumple con el anterior requisito, del concurso y firma de las personas referidas, *somos del criterio que las capitulaciones matrimoniales son nulas.* Véanse, *a esos efectos*: Castán Tobeñas, *op. cit.*, pág. 231; Manresa y Navarro, *op. cit.*, pág. 169; F. Puig Peña, *Tratado de Derecho Civil Español*, Madrid, Ed. Rev. Der. Privado, 1953, T. II, Vol. I, págs. 259–260; Scaevola, *op. cit.*, pág. 212.

 Es decir, "[c]omo inmediata consecuencia, el menor de edad que otorga sus capitulaciones matrimoniales sin la asistencia de las personas a que se refiere [el Art. 1270, ante, aun cuando después contraiga matrimonio con consentimiento de esas personas,] *cae bajo el imperio de la última parte de este artículo, su matrimonio es válido, sus capitulaciones fueron nulas*". (Énfasis suplido.) Manresa y Navarro, *op. cit.*, pág. 170.

 El requisito de la concurrencia de las antes mencionadas personas es esencial, ya que "es el único que, como especial, exige el Código para la validez de las capitulaciones matrimoniales de un menor, y como en ellas

pueden otorgarse verdaderos actos de enajenación o gravamen, aun de bienes inmuebles, no deja de ser una excepción importante en las reglas generales de la contratación". Manresa y Navarro, *op. cit.*, pág. 165. Acorde con lo anterior —según expresa Manresa y Navarro— si "las personas a quienes corresponde no concurrieron ni firmaron en las capitulaciones matrimoniales, *éstas no tienen fuerza alguna. La ley supone que nada se ha pactado, y el matrimonio se entiende contraído bajo el régimen de la sociedad de gananciales*". (Énfasis suplido.) Manresa y Navarro, *op. cit.*, pág. 171.

Por lo tanto, el referido contrato es "inexistente, cuya inexistencia es consecuencia natural de la nulidad del acto; no se trata de una pura formalidad exigida por la ley, se trata de un requisito esencial sin el cual, no media verdadero consentimiento". Manresa y Navarro, *op. cit.*, pág. 173. Véase, además, Scaevola, *op. cit.*, pág. 212.

Sobre este particular se ha pronunciado, de igual forma, el Tribunal Supremo de España. S. de 1 de julio de 1995, Núm. 6208, LXII (Vol. III) Repertorio de Jurisprudencia 8607. El referido Foro ha establecido que la falta del concurso de las personas designadas por la ley para dar el consentimiento al menor a fin de contraer matrimonio, determina la "nulidad absoluta", la "inexistencia" de las capitulaciones matrimoniales que los cónyuges intentaron llevar a cabo. Peña Bernaldo de Quirós, ante, págs. 305–306. Véanse, además: Santos Briz, *op. cit.*, pág. 127; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Eds. Pirámide, 1976, T. 1, pág. 131; L. Díez-Picazo, *Estudios sobre la Jurisprudencia Civil*, Madrid, Ed. Tecnos, 1969, Vol. II, pág. 339.

El peticionario entiende —al igual que lo hizo el foro primario— que al presente caso aplican las normas generales de los contratos con respecto a los vicios de consentimiento por razón de minoridad. Ello con el claro propósito de que establezcamos que un vicio en el consentimiento en un contrato por minoridad —conforme a las circunstancias

particulares del presente caso— hace que el contrato sea meramente anulable, con un término de impugnación de cuatro años desde que el menor de edad llega a la mayoridad. *No nos convence.*

Como vimos, a través del Art. 1270, ante, *el legislador específicamente estableció, para las capitulaciones matrimoniales otorgadas por menores, una excepción a la norma general de los contratos*; esto es, *el legislador estableció el requisito de la concurrencia al acto de unas personas en específico, sin las cuales el documento jurídico no tendría validez.*

En virtud de todo lo anteriormente expuesto, resolvemos que *no* fueron válidas las capitulaciones otorgadas en el presente caso, ya que el padre de Gil Enseñat no prestó su consentimiento a éstas. Conforme a lo anterior, por ser las capitulaciones radicalmente nulas, *éstas nunca tuvieron vida jurídica.* En consecuencia, nunca existió un término para impugnar su validez. Por ser esto así, la acción presentada por Gil Enseñat *no* está prescrita, ya que lo nulo nunca tuvo vida jurídica, por lo cual es posible en cualquier momento decretar la nulidad del contrato. Ello en virtud de que "en los casos de nulidad absoluta, la acción podrá interponerse por cualquier interesado y notoriamente por los acreedores de los cónyuges, quedando excluida la confirmación o convalidación del negocio nulo, y asimismo, en principio, la prescripción de la acción". Lacruz Berdejo, *op. cit.*, pág. 129.

Puesto que no existió un contrato de capitulaciones matrimoniales, el matrimonio de Gil Enseñat y Marini Román se rigió por el régimen supletorio de la Sociedad Legal de Gananciales. Conforme a ello, aún subsiste una comunidad de bienes que tiene que ser dividida.[11]

---

[11] Vale la pena destacar que todo notario tiene la responsabilidad de cerciorarse, en el otorgamiento de unas capitulaciones matrimoniales en el cual uno o ambos de los otorgantes es un menor de edad, de cuáles son las personas que ostentan la patria potestad sobre ese menor. A tales efectos, el notario tiene que verificar si los padres comparten la patria potestad sobre el menor aun cuando estén

## III

Por los fundamentos antes expuestos, *procede dictar sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones y, en consecuencia, devolver el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

_____

divorciados. Si ese es el caso, y no están presentes ambos padres, entonces el notario no podrá efectuar la referida escritura, so pena de incurrir en una violación a sus deberes.