El Juez Presidente Señor Hernández Dentón
emitió la opinión del Tribunal.
Para determinar el régimen económico seleccionado para regir el matrimonio entre el Sr. Osvaldo González Du-rieux y la Sra. Blanca Guadalupe Solís, debemos interpre-tar las capitulaciones matrimoniales que éstos otorgaron antes de contraer nupcias. En particular, nos corresponde resolver si el Tribunal de Apelaciones erró al confirmar la sentencia parcial emitida por el foro de instancia mediante la cual concluyó que la pareja contrajo matrimonio bajo el *679 régimen clásico de la Sociedad Legal de Bienes Gananciales. Por entender que dicho régimen no rige todos los intereses pecuniarios de la sociedad conyugal de la re-ferida pareja y que, por el contrario constituye un régimen económico mixto que combina elementos de la sociedad conyugal y del régimen de la separación de bienes, revoca-mos el dictamen recurrido.
I
El 6 de mayo de 1993, días antes de contraer nupcias, el señor González Durieux y la señora Guadalupe Solís acu-dieron a la oficina de la notario Carmen Astacio Caraballo con el propósito de otorgar una escritura de capitulaciones matrimoniales. Mediante la Escritura Número 8 de 6 de mayo de 1993 se expuso, en lo pertinente:
PRIMERO: Que es la intención de los comparecientes con-traer matrimonio entre s[í] y que con motivo de dichas nupcias desean otorgar las siguientes capitulaciones matrimoniales.
SEGUNDO: Que los comparecientes desean mantener sepa-radamente la propiedad y administración de todos sus respec-tivos bienes y futuros.
TERCERO: Que los comparecientes estipulan que su matri-monio no estaría sujeto al r[é]gimen de la sociedad legal de gananciales provista en el Código Civil de Puerto Rico, ni sus bienes presentes o futuros. Apéndice de la Petición de certio-rari, págs. 103-104.
Además, en el “OTORGAMIENTO” de la susodicha es-critura se estipuló, entre otras cosas, que ambos cónyuges tendrían “la libre administración de sus respectivos bienes propios y podr[ían] disponer de ellos sin intervención, limi-tación ni necesidad de consentimiento alguno ...”. Apéndice de la Petición de certiorari, pág. 103. Sin embargo, tras la aceptación, advertencias y lectura de las capitulaciones matrimoniales, los otorgantes decidieron incluir la cláu-sula que se reproduce a continuación:
EN ESTE ACTO, los comparecientes desean añadir que en lo *680 sucesivo, cualesquiera bienes muebles o inmuebles que pue-dan adquirir las partes, luego de celebrado el matrimonio, se regirá por el régimen de la sociedad legal de gananciales. Apéndice de la Petición de certiorari, pág. 105.
Incluida la cláusula antes citada, y manteniendo inalte-radas las disposiciones previamente redactadas, los otor-gantes firmaron la escritura y procedieron a celebrar su matrimonio el 9 de marzo de 1993.
Transcurridos diez años desde la celebración del matri-monio, el señor González Durieux presentó una demanda de divorcio por la causal de trato cruel.(1) Mientras dicho proceso se encontraba pendiente de adjudicación, la señora Guadalupe Solís entabló una demanda contra su cónyuge mediante la cual alegó que, conforme a las capitulaciones matrimoniales otorgadas por las partes, la Sociedad Legal de Gananciales era el régimen económico que gobernaba el matrimonio entre ambos. Partiendo de esta aseveración, indicó que la referida Sociedad había generado cuantiosos ingresos cuya cantidad desconocía porque siempre estuvie-ron bajo la absoluta y exclusiva administración del señor González Durieux. Como consecuencia de esto, solicitó la coadministración de los bienes gananciales, así como otros remedios preventivos, hasta tanto se realizara la división y liquidación correspondiente.
El señor González Durieux se opuso a dicha solicitud al aducir que la demanda estaba predicada en la premisa falsa de que entre las partes existía una Sociedad Legal de Gananciales. Por consiguiente, solicitó la desestimación de la reclamación bajo el fundamento de que las capitulacio-nes en controversia habían consagrado una total separa-ción de bienes presentes y futuros.
En atención a la controversia relacionada con el régi-men económico consagrado en las capitulaciones matrimo-niales, el tribunal de instancia celebró una vista en los *681 méritos para dilucidar la intención de las partes al mo-mento de otorgarlas. En la vista, dicho foro recibió los tes-timonios del señor González Durieux, la señora Guadalupe Solís y la licenciada Astacio Caraballo, notario que auto-rizó la escritura.
Examinada la prueba, el foro de instancia dictó una sen-tencia parcial mediante la cual resolvió que al introducir la última cláusula en las capitulaciones matrimoniales, el se-ñor González Durieux y la señora Guadalupe Solís selec-cionaron el régimen económico de la Sociedad Legal de Ga-nanciales para regir su matrimonio. Dicho foro entendió, además, que de ese régimen no se excluyeron los frutos civiles, naturales o industriales que generaran los bienes privativos de cualquiera de las partes, y que tampoco se estableció condición o limitación alguna sobre los efectos o incrementos en valor que tales bienes tuvieran durante la vigencia del matrimonio.
Como resultado de lo anterior, el tribunal de instancia le reconoció a la señora Guadalupe Solís un derecho a parti-cipar en todos los bienes adquiridos durante el matrimo-nio, aun cuando hubieran provenido de los bienes privati-vos del señor González Durieux. Entre esos bienes, dicho foro consideró de naturaleza ganancial las ganancias no distribuidas de la corporación Vieques Air Link, de la cual el señor González Durieux es presidente y único accionista desde antes de haberse casado.(2)
Insatisfecho con el dictamen, el señor González Durieux recurrió ante el Tribunal de Apelaciones y adujo que el foro de instancia incidió al apreciar erróneamente la prueba desfilada en la vista y resolver que entre las partes existía una sociedad conyugal para todos los fines prácticos. Por entender que la adopción de la última cláusula de las ca-pitulaciones tuvo el efecto de establecer el régimen de la *682 Sociedad Legal de Bienes Gananciales, el foro apelativo confirmó el dictamen recurrido.
Aún inconforme, el señor González Durieux acude ante nos. Específicamente plantea que se debió interpretar que el lenguaje añadido a posteriori en las capitulaciones ma-trimoniales tuvo el limitado efecto de mantener un “régi-men cuasi ganancial bajo el cual ‘en lo sucesivo cuales-quiera muebles e inmuebles que puedan adquirir las partes luego de celebrado el matrimonio se regirá por el régimen de la sociedad legal de gananciales ...’ ”. Petición de certiorari, pág. 5. Arguye, además, que la intención de las partes fue la separación de los bienes adquiridos previo al matrimonio, excluyendo también del carácter gananciál pactado con respecto a los bienes que se adquirieran du-rante el matrimonio los frutos, las rentas y los incrementos en valor o plusvalía de los bienes privativos.
Expedido el auto el 27 de abril de 2007, la señora Guadalupe Solís compareció ante nos para presentar su oposición. Con el beneficio de la comparecencia de ambas partes, resolvemos.
II
Nuestro ordenamiento jurídico permite que las parejas que deseen contraer nupcias tengan la opción de seleccionar, conforme entiendan conveniente, el régimen económico que regirá su futuro matrimonio. Por eso, antes de contraer nupcias, los futuros cónyuges pueden otorgar capitulaciones matrimoniales para reglamentar los intereses pecuniarios que surgen de dicha relación o establecér las condiciones de la sociedad conyugal relativas a los bienes presentes y futuros o, incluso, a aspectos no patrimoniales. Véanse: Art. 1267 del Código Civil, 31 L.P.R.A. see. 3551; Gil v. Marini, 167 D.P.R. 553 (2006); Maldonado v. Cruz, 161 D.P.R. 1 (2004).
Como las capitulaciones matrimoniales constitu- *683 yen contratos, en su preparación rige el principio de liber-tad de contratación. Este principio reconoce la autonomía de los contratantes y permite que éstos establezcan toda clase de pactos, cláusulas y condiciones. Véanse: Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372; Gil v. Marini, supra. Dicha voluntad contractual, aunque no es absoluta, tiene como único límite no estipular nada que contravenga las leyes, la moral, el orden público ni los fines del matrimonio. Véanse: Maldonado v. Cruz, supra; S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713 (2001); Umpierre v. Torres Díaz, 114 D.P.R. 449 (1983).
En efecto, el contrato de capitulaciones matrimoniales permite “regular los derechos de los esposos sobre sus bienes respectivos', los derechos sobre las ganancias realizadas por ellos durante su unión; los intereses de los hijos y de la familia; los intereses de los terceros que contratan con uno u otro de los esposos, y, en definitiva, el interés económico y social del matrimonio”. (Enfasis nuestro.) Maldonado v. Cruz, supra, pág. 16. Véanse: Gil v. Marini, supra; Domínguez Maldonado v. E.L.A., 137 D.P.R. 954, 960 (1995).
Al ejercer dicha facultad, los futuros cónyuges pueden optar por diversos regímenes económicos reconocidos por nuestro ordenamiento jurídico, tales como: (a) la total separación de bienes; (b) la separación de bienes, pero con una participación en las ganancias; (c) la Sociedad Legal de Gananciales; (d) renunciar al régimen legal de gananciales, o (e) cualquier otro régimen que combine estas posibilidades, siempre que no infrinja la ley, la moral o las buenas costumbres. Domínguez Maldonado v. E.L.A., supra; Umpierre v. Torres Díaz, supra.
Cabe recordar que para contraer matrimonio bajo el régimen de la Sociedad Legal de Gananciales “basta con guardar silencio y no estipular nada o estipularlo expresamente”. Maldonado v. Cruz, supra, pág. 17. Ello *684 porque la ley establece que dicho régimen suple la falta de capitulaciones o la falta de validez o eficacia de las que en efecto se otorguen. Véase Art. 1267 del Código Civil, supra.
Precisamente porque la falta de capitulaciones matri-moniales implica que el matrimonio se contrae bajo el ré-gimen de la Sociedad Legal de Gananciales, hemos soste-nido que las estipulaciones recogidas en el contrato de capitulaciones deben ser claras y precisas. A su vez, deben interpretarse estrictamente en todo lo que afecten al régi-men económico matrimonial. Vilariño Martínez u. Registrador, 88 D.P.R. 288 (1963).
Sin embargo, en ocasiones la escritura de capitulaciones matrimoniales —como contrato al fin— requiere un ejercicio de interpretación. Cuando ello sucede, “no son los otorgantes los llamados en casos de conflicto a interpretar las capitulaciones, pues esa facultad se halla reservada al criterio judicial cuando es requerido en forma para dar solución a intereses y derechos encontrados”. Vilariño Martínez v. Registrador, supra, pág. 294. Ante ese tipo de controversia, los tribunales deberán ejercer su facultad interpretativa conforme a las normas de hermenéutica contractual dispuestas en el Código Civil.
Sobre estas normas de interpretación hemos reiterado que cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes, se utilizará el sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; Trinidad v. Chade, 153 D.P.R. 280 (2001). Sin embargo, en ocasiones no es posible determinar la voluntad de los contratantes mediante la mera lectura literal de las cláusulas contractuales. S.L.G. Irizarry v. S.L.G. García, supra. En tales casos, si alguna cláusula admite diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto. Art. 1236 del Código Civil, 31 L.P.R.A. sec. 3474.
Asimismo, cabe recordar que si bien hay que con- *685 siderar la intención de las partes para interpretar los con-tratos, la interpretación que se realice tiene que ser cón-sona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. S.L.G. Irizarry v. S.L.G. García, supra; Municipio de Mayagüez v. Lebrón, 167 D.P.R. 713 (2006). Por eso, las cláusulas de un contrato deberán interpretarse de manera integral y no aislada-mente, buscando su verdadero sentido y atendiendo a la interpretación de unas cláusulas con relación a otras. Véanse: Art. 1237 del Código Civil, 31 L.P.R.A. sec. 3475; CNA Casualty of P.R. v. Torres Díaz, 141 D.P.R. 27 (1996); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345 (1984).
Ill
Según los preceptos antes expuestos, debemos examinar el contrato de capitulaciones matrimoniales ante nuestra consideración para determinar el régimen económico que el señor González Durieux y la señora Guadalupe Solís se-leccionaron para regir los intereses pecuniarios de la socie-dad conyugal compuesta por ambos.
El señor González Durieux reconoce que el régimen eco-nómico que originalmente intentó consagrar mediante las capitulaciones matrimoniales fue el de una absoluta sepa-ración de bienes presentes y futuros, pero sostiene que me-diante la inclusión de la cláusula final cedió, en parte, su reclamo y accedió a reconocerle a la señora Guadalupe So-lís participación en los bienes que en el futuro adquirieran. De esta forma, arguye que nunca consintió a la entrega de los frutos procedentes de sus bienes privativos.
Por su parte, la señora Guadalupe Solís aduce que el régimen que gobierna el matrimonio entre ambos es el de la Sociedad Legal de Bienes Gananciales para todos los efectos legales. Ello porque, a su entender, en el contrato de capitulaciones matrimoniales no se estableció ninguna *686 condición o limitación de los efectos del régimen de ganan-ciales sobre los bienes adquiridos por las partes antes de contraer matrimonio.
Los foros inferiores determinaron que las estipulaciones incluidas en las capitulaciones matrimoniales en contro-versia eran contradictorias y que la última cláusula aña-dida reflejaba que los otorgantes finalmente acordaron que el régimen de la Sociedad Legal de Bienes Gananciales re-giría el matrimonio. Por su parte, el señor González Du-rieux plantea que dichos foros erraron al hacer prevalecer una sola cláusula frente a las demás, en lugar de armoni-zarlas para hacer valer la verdadera intención de los con-tratantes que pretendían establecer un régimen económico combinado. Tras examinar la escritura de capitulaciones matrimoniales, así como la transcripción de los testimonios vertidos por las partes ante el foro de instancia, entende-mos que al señor González Durieux le asiste la razón.
En el caso de autos no está en controversia que el régi-men de la sociedad legal de bienes gananciales rige los bienes que las partes adquirieron durante la vigencia del matrimonio. La cuestión ante nuestra consideración es si se debe considerar que la cláusula de la escritura que adopta un régimen ganancial abarca también el producto proveniente de los bienes adquiridos por cada una de las partes antes de casarse, es decir, los frutos de los bienes privativos.
Antes de interpretar la escritura en cuestión, debemos aclarar el efecto práctico que tendría una u otra solución. Los bienes que una persona aporte al matrimonio como de su pertenencia serán “bienes propios de cada uno de los cónyuges” o, lo que es igual, bienes privativos. 31 L.P.R.A. sec. 3631. Sin embargo, una vez se celebra el matrimonio, como regla general, “[Z]os frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges” serán bienes gananciales. (Énfasis *687 nuestro.) Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641. Es decir, para que el producto procedente de los bienes que cada cónyuge adquirió antes de contraer matrimonio no sea ganancial, habrá que pactar la separación de dichos bienes mediante un contrato de capitulaciones matri-moniales. De lo contrario, y como consecuencia del régimen de la Sociedad Legal de Gananciales, dicho producto será ganancial por mandato de ley.(3)
En el presente caso, la cláusula segunda de la parte expositiva del contrato de capitulaciones matrimoniales ante nuestra consideración dispone que los otorgantes de-sean “mantener separadamente la propiedad y administra-ción de todos sus respectivos bienes [presentes] y futuros”. (Enfasis nuestro.) Apéndice de la Petición de certiorari, pág. 104. Enfatizaron esta separación de bienes mediante la siguiente cláusula, en la que expresamente rechazaron que el matrimonio estuviese sujeto al régimen de la socie-dad legal de gananciales provista en nuestro Código Civil, aclarando además que tampoco lo estarían sus bienes “pre-sentes o futuros”. (Énfasis nuestro.) íd. De estas disposicio-nes se deduce que, en un principio, los otorgantes estipu-laron una total separación de la propiedad y adminis-tración tanto de los bienes que habían adquirido antes de contraer nupcias como de los que fueran a adquirir du-rante la vigencia del matrimonio.
Sin embargo, del expediente surge que tras una nego-ciación en privado entre los futuros cónyuges, éstos deci-dieron incluir al final de la escritura una cláusula que es-tablecía que “en lo sucesivo, cualesquiera bienes muebles o inmuebles que puedan adquirir las partes, luego de cele-brado el matrimonio, se regirá por el régimen de la socie-dad legal de gananciales”. (Énfasis nuestro.) Apéndice de *688 la Petición de certiorari, pág. 105. Al examinar dicha cláu-sula según la normativa que nos requiere analizar las dis-posiciones contractuales de forma integrada, concluimos que la inclusión de esta última disposición no tuvo el efecto de anular el resto de las capitulaciones matrimoniales. Por el contrario, entendemos que mediante su inclusión los otorgantes modificaron las cláusulas contenidas en la parte expositiva de las capitulaciones matrimoniales para conferirle carácter ganancial únicamente a los bienes ad-quiridos con posterioridad a la celebración del matrimonio. Veamos.
Si analizamos la escritura en controversia, podemos no-tar que, al incluir la última cláusula, los otorgantes se ase-guraron de sujetar exclusivamente los bienes futuros, o los que adquiriesen luego de que se casaran, al régimen ganancial. Ello es así porque, contrario a las referencias que habían incluido a lo largo de las capitulaciones matri-moniales en cuanto a “sus respectivos bienes propios” o, incluso, a los “bienes presentes”, la referida cláusula final mencionó únicamente los bienes que se pudieran adquirir “luego de celebrado el matrimonio”. Apéndice de la Petición de certiorari, pág. 105. Asimismo, al añadirla para dispo-ner el régimen que iba a regir los bienes “en lo sucesivo”, los otorgantes desvincularon de ese régimen aquellos bie-nes que se hubiesen adquirido hasta ese momento, previo al suceso del matrimonio.
El contraste en el lenguaje que los otorgantes utilizaron en las cláusulas contractuales en controversia —referente al momento en que se hubieran adquirido los bienes— pone de manifiesto que la última estipulación no contra-vino en modo alguno el régimen de separación de propie-dad y administración que éstos previamente habían dis-puesto para regir los “bienes presentes” al momento de otorgar la escritura y previo a contraer nupcias. Contrario a lo resuelto por el foro recurrido, entendemos que no era necesario excluir de forma expresa el incremento o au- *689 mentó de valor de los bienes privativos del régimen econó-mico seleccionado para que no se considerasen de natura-leza ganancial, ya que los derechos sobre los bienes privativos ya se habían regulado —y desvinculado de los intereses de la sociedad conyugal— mediante las otras dis-posiciones de la escritura. De lo contrario, no hubiera te-nido sentido incluir —y mantener inalteradas— las cláu-sulas sobre separación de “bienes presentes”, cláusulas que no podemos ignorar por el mero hecho de que se redactaran en la primera parte de las capitulaciones matrimoniales, antes de la inclusión de la cláusula añadida posterior-mente.
En efecto, si las capitulaciones matrimoniales no hubieran dispuesto la separación de los bienes que cada cónyuge tenía antes de casarse junto con sus frutos o incrementos en valor, no hubiera habido ninguna necesidad de otorgarlas. Ello porque, en nuestro ordenamiento jurídico, la separación de los bienes adquiridos por las partes antes de contraer matrimonio está dada, aún en ausencia de capitulaciones matrimoniales. Esto demuestra que el señor González Durieux y la señora Guadalupe Solís, al firmar sus capitulaciones, querían separar algo más que los bienes que ya habían adquirido antes de casarse, y ese algo más son los frutos o incrementos en valor procedentes de los bienes privativos de cada cónyuge.
De otra parte, si consideramos los testimonios de las partes ante el Tribunal de Primera Instancia debemos con-cluir, de igual forma, que los otorgantes consagraron en la escritura de capitulaciones matrimoniales un régimen eco-nómico mixto que combinaba elementos de la Sociedad Legal de Bienes Gananciales con el régimen de la separación de bienes.
Por un lado, el señor González Durieux testificó que cuando se firmó el documento, “[l]a cuestión era mantener lo que eran bienes privativos [,] mantenerlos fuera de todo”, aun cuando entendía que, después de contraer matrimo- *690 nio, la sociedad de gananciales regiría en caso de que com-praran una casa o un apartamento. Apéndice del Alegato de la peticionaria, pág. 14. De acuerdo con ello, sostuvo que entendía que si “eran bienes privativos!,] sigue[n] siendo bienes privativos”. Apéndice del Alegato de la peticionaria, pág. 18.
Por otro lado, la señora Guadalupe Solís sostuvo que su intención fue que todos lo “bienes futuros” se rigieran por el régimen legal de la sociedad conyugal. Al no controvertir lo expresado por el señor González Durieux en cuanto a mantener separado todo lo relativo a los bienes privativos, entendemos que su testimonio es compatible con lo que plantea el señor González Durieux. De hecho, la señora Guadalupe Solís declaró que, tras la inclusión de la cláu-sula final, firmó las capitulaciones porque la escritura le pareció aceptable en su totalidad. De acuerdo con lo anterior, tampoco podemos endosar el dictamen recurrido, que por no incluir ninguna condición o limitación expresa al régimen ganancial pactado, ni siquiera consideró la posibi-lidad de que se hubiera estipulado un régimen económico combinado.
En fin, una interpretación integrada de las cláusulas contractuales en controversia, así como un análisis de lo declarado por las partes, nos convence de que la escritura de capitulaciones matrimoniales estableció —tal y como sostiene el señor González Durieux— un “régimen cuasi ganancial” para todos los bienes que las partes adquirieran luego de que se celebrara el matrimonio, pero manteniendo la separación de los “bienes presentes” al momento de otor-gar la escritura pública, es decir, de los bienes que cada uno tuviera antes de contraer matrimonio.
Al resolver de esta manera, tenemos presente que las parejas que deseen contraer nupcias en nuestra jurisdicción pueden optar por diversos regímenes económicos, que incluyen desde el régimen clásico de la Sociedad *691 Legal de Bienes Gananciales o la total separación de bie-nes hasta un régimen económico que combine estas posibilidades. En este caso, precisamente, los otorgantes pactaron un régimen combinado que separaba el producto de los bienes privativos del régimen ganancial seleccionado para los bienes adquiridos con posterioridad a la celebra-ción del matrimonio. Este pacto, sin lugar a dudas, no infringe la ley, la moral, el orden público ni los fines del ma-trimonio, únicos límites que nuestro ordenamiento jurídico le impone a la libertad de contratación.
Aunque hemos establecido que, como regla general, este Tribunal no intervendrá con las determinaciones de hecho que realice el Tribunal de Primera Instancia, salvo que se demuestre parcialidad, pasión o prejuicio de parte de ese foro, concluimos que en el caso de autos los foros inferiores erraron, como cuestión de derecho, al no reconocer la natu-raleza combinada del régimen económico seleccionado por las partes en las capitulaciones matrimoniales ante nues-tra consideración. Trinidad v. Chade, supra. En su lugar, resolvemos que ambos cónyuges tienen derecho a partici-par en todos los bienes adquiridos durante el matrimonio, con exclusión de los que provengan de los bienes privativos de cada uno de ellos.
IV
Por los fundamentos que preceden, revocamos el dicta-men emitido por el Tribunal de Apelaciones y, en consecuen-cia, el del Tribunal de Primera Instancia. Se devuelve el caso al foro de instancia para la continuación de los proce-dimientos de forma compatible con lo aquí resuelto.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió sin opinión escrita. La Jueza Asociada Señora Fiol Matta disintió con una opinión escrita.

 Del expediente surge que esta demanda eventualmente se desestimó por desistimiento.

 Posteriormente, el tribunal enmendó esa sentencia para ordenar que un contador levantara el inventario de los bienes y rindiera el informe correspondiente para salvaguardar el derecho de la señora Guadalupe Solís a la coadministración de los bienes gananciales y evitar que éstos se dispusieran en peijuicio de sus derechos.

 Conviene añadir también que si el aumento en valor de un inmueble o de unas acciones es sólo el resultado del transcurso del tiempo, hemos establecido que tal aumento beneficiará únicamente al propietario del bien y, en consecuencia, tal ganancia se considerará de carácter privativo. Alvarado v. Alemany, 157 D.P.R. 672 (2002); Sucn. Santaella v. Srio. de Hacienda, 96 D.P.R. 442 (1968).