ALFREDO ABRÉU ROMÁN ET AL., demandantes, recurrentes y recurridos, *v.* LUIS RIVERA SANTOS y MANUEL PIÑERO DÍAZ, demandados, recurridos y recurrentes.

*Números:* R-62-194, R-62-196    *Resueltos:* 6 de mayo de 1965

326

*S. L. Lagarde Garcés,* abogado de los demandantes; *J. B. Fernández Badillo, Procurador General,* y *Jorge Segarra Olivero, Procurador General Auxiliar,* abogados de los demandados.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: Los demandantes, todos ellos caficultores de la zona de Adjuntas, presentaron demanda en 5 de junio de 1959 ante el Tribunal Superior, Sala de San Juan, contra Luis Rivera Santos, Secretario de Agricultura y Manuel Piñero Díaz, Director del Seguro del Café de Puerto Rico, alegando tener aseguradas todos sus cosechas y algunos las plantaciones con el Seguro del Café y reclamando la compensación correspondiente por los daños alegadamente sufridos en dichas cosechas y plantaciones con motivo de los "vientos huracanados" que azotaran la Isla durante los días 13 y 14 de septiembre de 1958. Los demandados contestaron aceptando que los demandantes estaban asegurados con el Seguro del

Café.. Negaron la ocurrencia de los "vientos huracanados" o que aquéllos sufrieran daños en sus cosechas y plantaciones. Alegaron como defensa especial la falta de jurisdicción del Tribunal ya que según las disposiciones de la Ley y el Reglamento del Seguro del Café y los términos y condiciones de las pólizas expedidas a los demandantes se requiere se lleve a arbitraje las diferencias que pudieren surgir respecto al importe de las pérdidas sufridas, requisito indispensable y mandatorio que "excluye toda acción judicial mientras no se haya determinado la controversia mediante arbitraje".

El tribunal inferior procedió a la vista del caso en sus méritos. En la sentencia dictada desestimó la defensa especial de los demandados al concluir que, como cuestión de derecho, la negativa de responsabilidad por parte de los demandados y la ineficacia del arbitraje debido a la dilación e irregularidad en los procedimientos no impedía a los demandantes acudir a los tribunales en reclamación de sus derechos. También concluyó el tribunal que como cuestión de hecho la zona donde radican las fincas de los demandantes fue azotada por vientos huracanados durante los días 13 y 14 de septiembre de 1958 ocasionándoles pérdidas en sus cosechas, aunque no así en las plantaciones, y condenó a los demandados a compensar a los demandantes en sus pérdidas y al pago de los honorarios de abogado.

De la sentencia así dictada ambas partes recurrieron ante este Tribunal señalando los demandantes [1] como error la negativa del tribunal inferior a reconocer los daños en las plantaciones y el demandado la desestimación de la defensa especial y la condena en honorarios de abogado. Los recursos fueron consolidados.

---

[1] Solamente los demandantes Alfredo Abréu Román, Benigno González Santiago, José Enrique González, Confesor Maldonado Sepúlveda, Luis Maldonado Serrano, Lorenzo Olivera Hernández, Baldomero Ortiz Cruz, Antonio Soto Matías, Arsenio Matos y Bernardo Pons son las partes recurrentes en el caso R-62-196 ya que eran los únicos que tenían sus plantaciones aseguradas.

La Ley del Seguro del Cafe(²) dispone en lo pertinente:

"El Secretario de Agricultura y Comercio podrá demandar y ser demandado a nombre y en representación del Estado Libre Asociado de Puerto Rico por cualesquiera reclamación de buena fe que surja con relación al negocio de seguro o reaseguro del café autorizado por [esta ley] a tal fin renunciando el Estado a su inmunidad y reconociendo cualesquiera obligación fuere debidamente establecida y fijada por los tribunales de justicia *luego de agotado previamente el procedimiento administrativo correspondiente para liquidar la reclamación; Disponiéndose que cuando ambas partes aceptaren la obligación y sólo hubiere conflicto en cuanto a alguna diferencia, la acción en los tribunales se dará sólo con relación a la diferencia . . .*"

". . . . . . . .

"El Seguro del Café de Puerto Rico establecerá la forma para ajustar y pagar reclamaciones por pérdidas de café ocasionadas por huracanes." (Énfasis suplido.)

Los Reglamentos del Seguro del Café vigentes entonces, tanto el de cosecha como el de plantación, disponían en su Art. 18 a la parte pertinente:

". . . . . . . .

"Antes de empezar el arbitraje de la cuestión sometida, los dos árbitros nombrarán por escrito un tercer árbitro. Este tercer árbitro estará presente en la vista de arbitraje, y decidirá los puntos de discrepancia de la cuestión sometida a arbitraje en los cuales los otros dos árbitros no estuvieran de acuerdo.

"Los árbitros o el tercero en discordia, tendrán que decidir en qué proporción las partes deben soportar los gastos y dispendios varios relativos al arbitraje.

"*La evaluación previa de la pérdidas o daños por medio de un arbitraje en la forma antedicha es indispensable, y mientras no haya tenido lugar dicho arbitraje, el Asegurado no podrá entablar ninguna reclamación judicial con motivo de la póliza.*"(³) (Énfasis suplido.)

---

(²) 5 L.P.R.A. secs. 290–317.

(³) Redacción idéntica tiene la cláusula 15 de las pólizas de seguro de cosecha y la cláusula 13 de las pólizas de seguro de plantación.

De los hechos del caso surge que a raíz de la ocurrencia de los vientos huracanados([4]) los demandantes notificaron al Seguro del Café que a causa de los vientos ocurridos sus cosechas y plantaciones habían sufrido pérdidas por lo cual solicitaban se les diera curso a los trámites correspondientes para ajustar y pagar sus reclamaciones. El Seguro del Café contestó negando que los vientos que azotaran las fincas de los demandantes fueran "vientos huracanados" según éstos se definen en la ley,([5]) por lo cual no procedía a darle curso a sus reclamaciones. Sin embargo el Seguro envió varios inspectores a inspeccionar la finca de los demandantes la cual se realizó durante los meses de septiembre y octubre de 1958. Los informes de los inspectores no reconocían pérdidas compensables en las cosechas o plantaciones de los demandantes.

El 1ro. de noviembre de 1958 el Lic. S. L. Lagarde Garcés, en representación de los reclamantes solicitó del Seguro del Café que aceptara que los vientos ocurridos eran de la naturaleza que contempla la ley y por tanto su responsabilidad hacia los reclamantes y que se procediera al arbitraje. El Seguro del Café contestó en sentido de que "la posición de este Departamento, como usted bien dice, es que no ocurrió perturbación atmosférica de la naturaleza comprendida en la definición de 'huracán' que contiene la ley, y que de haber ocurrido, las pérdidas de cosechas de café que pudiera haber ocasionado no llegaron a más de 10 por ciento de las cosechas existentes."

Ambas partes procedieron a nombrar sus respectivos árbitros y terceros árbitros los que comenzaron la inspección de las fincas en diciembre del mismo año. A la fecha de radicación de la demanda, 5 de junio de 1959, todavía no se habían rendido los laudos.

---

([4]) La naturaleza huracanada de los vientos ocurridos durante los días 13 y 14 de septiembre de 1958 fue debidamente establecida mediante prueba documental y testimonio ofrecido por el Sr. Ralph Higgs, Director del Negociado del Tiempo.

([5]) El Art. 17 (5 L.P.R.A. sec. 291) define "huracán" como "turbión, temporal de viento, o vientos huracanados que causare pérdidas en las de café . . .".

Actuó correctamente el tribunal al desestimar la defensa especial de los demandados.

La ley dispone que la acción en los tribunales tendrá lugar "luego de agotado previamente el procedimiento administrativo correspondiente" según éste fuere determinado por el Seguro del Café. El Seguro del Café, en virtud de las funciones delegadas determinó que el procedimiento de arbitraje constituiría el remedio administrativo para ajustar y pagar las reclamaciones por pérdidas de café. Es por tanto requisito indispensable que un reclamante se someta al procedimiento de arbitraje para determinar las pérdidas antes de acudir a los tribunales.

Pero las circunstancias presentes en el caso de autos en que nueve meses después de ocurrida la pérdida y seis meses después de nombrado los árbitros todavía no había una determinación del monto de las pérdidas, nos parece justificaba a los caficultores a acudir a los tribunales en reclamación de sus derechos al amparo de la póliza. Evidentemente era muy difícil que los árbitros pudieran rendir laudo alguno ya que, como determinó el tribunal de instancia, el árbitro del Seguro del Café y un tercer árbitro "se negaron a firmar un escrito propuesto por el árbitro de los demandantes para establecer las normas que habían de regir el arbitraje, y cuyo acuerdo o escrito de arbitraje fechado 3 de marzo de 1959 establece las normas y condiciones prescritas en las pólizas y en los reglamentos del Seguro del Café para la determinación de pérdida en las cosechas y plantaciones."

Si no pudiera ponerse de acuerdo en cuanto a las normas a seguir para la evaluación de los daños, ciertamente no podían hacer determinación alguna. No podía insistirse en el arbitraje. Aquí tenemos un caso en que mediante contrato las partes convinieron que de haber daños la cuantía se determinara mediante arbitraje. Y el tribunal de instancia concluyó que los árbitros no pudieron realizar sus funciones debido a que no pudieron ponerse de acuerdo en cuanto a las

normas que debían seguir para realizarla. Siendo ello así evidentemente los demandantes estaban justificados en acudir a los tribunales sin esperar más, pues cada día que pasaba se hacía más difícil la determinación de las pérdidas sufridas. Ya en *Pons* v. *Rivera Santos*, 85 D.P.R. 524 (1962), anunciamos que en la interpretación del contrato de seguro de cosecha de café no se impone un criterio riguroso y legalista, sino uno liberal que promueva los fines y propósitos del estatuto que lo creó. Bajo las circunstancias del presente caso sostener la posición de los demandados requiriría una aplicación demasiado literal de la disposición sobre arbitraje.

Luego de examinar la evidencia que tuvo ante sí el tribunal inferior no encontramos razón por la cual debemos alterar su determinación al efecto de que no hubo pérdidas en las plantaciones de los demandantes.

No se cometió error al condenar al demandado al pago de los honorarios de abogado ya que éste fue temerario al negar la ocurrencia de los vientos cuando en un pleito anterior ante el mismo tribunal (*Látimer* v. *Rivera Santos*, C-59-7057) lo aceptó.

*Se confirmará la sentencia recurrida.*