Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PEDRO JOSÉ DE PEDRO MARTÍNEZ<br><br>Demandante Apelada<br><br><br>v.<br><br><br>JOSÉ RAUL DE PEDRO MARTÍNEZ Y OTROS<br><br>Demandados Apelantes | KLAN202400770<br><br><br>CONSOLIDADO | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2018CV02909<br><br>Sobre:<br>Acción de Nulidad de Contrato |
| PEDRO JOSÉ DE PEDRO MARTÍNEZ<br><br>Demandante Apelante<br><br><br>v.<br><br><br>JOSÉ RAUL DE PEDRO MARTÍNEZ Y OTROS<br><br>Demandados Apelados | KLAN202400772 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2018CV02909<br><br>Sobre:<br>Acción de Nulidad de Contrato |
| PEDRO JOSÉ DE PEDRO MARTÍNEZ<br><br>Demandante Apelado<br><br><br>v.<br><br><br>JOSÉ RAUL DE PEDRO MARTÍNEZ Y OTROS<br><br>Demandantes Apelantes | KLAN202400774 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2018CV02909<br><br>Sobre:<br>Acción de Nulidad de Contrato |

Panel especial integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2024.

Comparecen el señor José Raúl De Pedro Montes, la señora Marly Martínez de Andino y la Sociedad Legal de Gananciales

compuesta por estos y el señor José Raúl De Pedro Martínez (conjuntamente "demandados") en recursos separados, más el señor Pedro José De Pedro Martínez y la señora Rebecca De Pedro González (conjuntamente "demandantes") en otro recurso individual, mediante apelación y solicitan que revoquemos total o parcialmente la *Sentencia Parcial Nunc Pro Tunc* del Tribunal de Primera Instancia, Sala Superior de Bayamón, emitida el 2 de agosto de 2024. En dicho dictamen, se determinó que una transacción de acciones corporativas es nulo *ab initio* y, en efecto, se deben devolver las referidas acciones a su respectiva comunidad hereditaria, para que esta última deba pagar un crédito por las prestaciones habidas en pago por las acciones. Por los fundamentos que expresaremos, confirmamos en parte y revocamos en parte la *Sentencia Parcial Nunc Pro Tunc* recurrida.

En síntesis, el caso de epígrafe trata de una demanda de nulidad de contrato, daños y perjuicios y caducidad de albaceazgo, entre otros, instado por los peticionarios contra el señor José Raúl De Pedro Martínez (señor José De Pedro Martínez) y otros. Según el expediente, la señora Diana Eva Martínez Contreras (señora Martínez Contreras) y el señor Raúl De Pedro Villamil (señor De Pedro Villamil) se habían casado bajo el régimen de la Sociedad Legal de Gananciales y ambos tenían acciones en la corporación Refrigerama, Inc. (Refrigerama) y la subsidiaria de esta. La señora Martínez Contreras falleció el 10 de abril de 2006 y dejó un testamento en la cual dispuso que (1) el tercio de libre disposición lo instituye y lega por partes iguales a sus nietos, es decir, los hijos e hijas del señor José De Pedro Martínez y el señor Pedro José De Pedro Martínez (señor Pedro De Pedro Martínez); y (2) las acciones de Refrigerama o sus subsidiarias que forman parte del caudal

de la testadora se legarán en partes iguales dentro de los dos tercios de legítima a sus hijos, el señor José De Pedro Martínez y el señor Pedro De Pedro Martínez.

Más adelante, el señor De Pedro Villamil perfeccionó un contrato con su nieto, el señor José Raúl De Pedro Montes (el señor De Pedro Montes), y la esposa de este, la señora Marly Martínez de Andino (señora Martínez de Andino). En la misma, aparece que (1) las partes reconocen que dichas acciones actualmente pertenecen al señor De Pedro Villamil y a la Sucesión de la señora Martínez Contreras, ya que estas fueron adquiridas en matrimonio bajo la Sociedad Legal de Gananciales; (2) que el señor De Pedro Villamil ostenta un cincuenta (50%) por ciento de participación, titularidad y/o derecho de posesión en las acciones; (3) que al momento de redactarse el contrato las acciones no han sido divididas y/o repartidas conforme a derecho; (4) que es la intención del señor De Pedro Villamil vender, ceder y traspasar al señor De Pedro Montes y su esposa todo derecho de titularidad, participación y posesión de sus acciones, independientemente de que se hayan o no se hayan repartido las acciones en sujeción a la liquidación de los bienes del caudal relicto de la señora Martínez Contreras; (5) que las acciones que el señor De Pedro Villamil cederá están divididas en cincuenta y seis y medias (56.50) acciones en Refrigerama y en sesenta y nueve (69.00) acciones en las Empresas R y D de Puerto Rico, Inc. (Empresas R y D), para un total de ciento veinticinco y medias (125.50) acciones; y (6) que el señor De Pedro Montes y la señora Martínez de Andino realizarán un pago inicial contra las deudas acumuladas por el señor De Pedro Villamil y unos pagos anuales por los próximos diez (10) años, todo

por lo cual conlleva un total de setecientos cincuenta mil ($750,000) dólares. El contrato fue enmendado el 29 de agosto de 2008 para incluir el nombre de Empresas R y D dentro de la posesión de las acciones del señor De Pedro Villamil.

Poco después, se perfeccionó un contrato de préstamo firmado por el señor De Pedro Montes, la señora Martínez de Andino, el señor José De Pedro Martínez y el señor Pedro De Pedro Martínez y en el cual se dispone que mediante la compraventa suscrita el 29 de agosto de 2008, el señor De Pedro Montes y la señora Martínez de Andino adquirieron la participación, intereses y/o acciones del señor De Pedro Villamil en Refrigerama y Empresas R y D. Asimismo, la convocatoria para una reunión extraordinaria de los directores de Refrigerama y Empresas R y D menciona que el señor De Pedro Montes adquirió la participación del señor De Pedro Villamil. No obstante, según más adelante declarará la señora Rebecca De Pedro González (señora De Pedro González)—y el señor De Pedro Montes, la señora Martínez de Andino y la Sociedad Legal de Gananciales compuesta por (SLG Montes-Martínez) admitirán como hecho incontrovertido—el señor Pedro De Pedro Martínez le entregó a la mencionada señora De Pedro González, su hija, copia del contrato en controversia, de esta manera conociendo por primera vez de la transacción. El 5 de septiembre de 2018, el señor De Pedro Montes y la señora Martínez de Andino hicieron el último pago requerido a la Sucesión del señor De Pedro Villamil.

Luego de perfeccionarse el referido contrato, el señor De Pedro Villamil falleció el 7 de octubre de 2012, dejando un testamento otorgado el 24 de junio de 2008, en la cual dispuso (1) que ordena

disponer solamente de los bienes que le corresponden en la liquidación de la Sociedad Legal de Gananciales habida con la señora Martínez Contreras, cual deberá ser divido entre el señor De Pedro Villamil y los herederos a entera satisfacción de las partes; (2) que hizo varias donaciones a sus hijos y nietos las cuales no serán colacionables, menos en todas aquellas que realice después de otorgarse el testamento; y (3) que no se tomarán en consideración las donaciones realizadas a su nieto, el señor De Pedro Montes, en el 2004.

Por todo lo anterior, y después de presuntamente haberse tratado de transar el caso extrajudicialmente, el 19 de septiembre de 2018 el señor Pedro De Pedro Martínez presentó una demanda sobre nulidad absoluta contra el señor José De Pedro Martínez, el señor De Pedro Montes, la señora Martínez de Andino y la SLG Montes-Martínez. Posteriormente, el señor De Pedro Montes, la señora Martínez de Andino, la SLG Montes-Martínez y el señor José De Pedro Martínez solicitaron sentencia sumaria, durante una etapa del pleito en la cual la única causa de acción era la nulidad del contrato. Sin embargo, el foro primario ordenó la inclusión de todos los miembros de las comunidades hereditarias pertinentes, una gestión que el señor Pedro De Pedro Martínez y la señora De Pedro González cumplieron mediante una demanda enmendada presentada el 16 de abril de 2019. Tal demanda también añadió otras causas de acción concerniendo la liquidación de las comunidades hereditarias y el albaceazgo del señor José De Pedro Martínez de la Sucesión Martínez Contreras.

Mediante varias enmiendas, mociones y réplicas —que incluyeron una solicitud de sentencia sumaria del señor Pedro De Pedro Martínez y la señora De Pedro González, y otra por el señor De Pedro

Montes, la señora Martínez de Andino y la SLG Montes-Martínez— el señor De Pedro Montes, la señora Martínez de Andino y el señor José De Pedro Martínez reiteraron que no existían controversias en cuanto a la validez del contrato y la doctrina de prescripción adquisitiva extraordinaria, más que el señor Pedro De Pedro Martínez y la señora De Pedro González tenían legitimación para impugnar dicho contrato. Además, el señor De Pedro Montes, la señora Martínez de Andino y el señor José De Pedro Martínez admitieron que el señor De Pedro Montes y el señor De Pedro Villamil fueron los únicos miembros de la comunidad hereditaria en consentir enajenar las acciones pertenecientes a la Sucesión de la señora Martínez Contreras, pero que tal vicio o defecto del contrato—es decir, la venta que hizo el señor De Pedro Villamil de cosa ajena—solo hace el mismo anulable. Por último, el señor De Pedro Montes, la señora Martínez de Andino y la SLG Montes-Martínez argumentaron que estos adquirieron las acciones mediante la prescripción adquisitiva extraordinaria al transcurrir seis (6) años de firmarse el contrato, y que el señor Pedro De Pedro Martínez y la señora De Pedro González solo tenían cuatro (4) años después de firmarse el contrato para impugnar la compraventa, cual no hicieron.

Luego de varios trámites procesales y el juez ser reemplazado por la Jueza Nydia del C. Ríos Jiménez, el foro primario resolvió sin lugar la solicitud de sentencia sumaria del señor De Pedro Montes, la señora Martínez de Andino y el señor José De Pedro Martínez, sin resolver la solicitud de sentencia sumaria de los apelados. Posteriormente, el señor Pedro De Pedro Martínez y la señora De Pedro González recurrieron mediante *certiorari* ante el Tribunal de Apelaciones para solicitar que se declare la nulidad del contrato, ya que

arguyeron que el foro primario concluyó que existían controversias de hechos, cuando en verdad eran de derecho. Este Tribunal denegó expedir el auto de *certiorari* y añadió que existen cuestiones de hecho que deben dilucidarse en una vista en su fondo, entre otros detalles.

Finalmente, luego de otros trámites procesales y esta vez mediante la Jueza Teresita M. Mercado Vizcarrondo, el foro de primera instancia emitió *Sentencia Parcial* en la cual concluyó que la causa de acción no estaba prescrita y que el contrato en controversia era nulo *ab initio*. Por tanto, dicho foro ordenó que se devolvieran las acciones a la comunidad hereditaria y el pago de un crédito por lo pagado por la compraventa. Posteriormente, el foro primario emitió una *Sentencia Parcial Nunc Pro Tunc* para modificar el nombre de una entidad y la fecha antes del cual comenzaron a ocurrir los hechos en controversia, luego emitió otra *Sentencia Parcial Nunc Pro Tunc* para incluir el lenguaje que dispone la Regla 42.3 de Procedimiento Civil de 2009 (32 LPRA Ap. V). Luego de todas las partes solicitar reconsideración y/o determinaciones de hechos y conclusiones de derecho adicionales, el foro primario resolvió sin lugar a todas las solicitudes.

Insatisfechos, el señor De Pedro Montes, la señora Martínez de Andino y la SLG Montes-Martínez recurren ante este Tribunal y alegan que el foro primario erró (1) al devolver la vida a una solicitud de sentencia sumaria y así violando lo establecido por el foro primario y el foro apelativo y que constituía la ley del caso; (2) al resolver que no existían hechos en controversia, ignorando planteamientos sobre la existencia de hechos fundamentados y no controvertidos; (3) al resolver que el contrato de compraventa de acciones y su enmienda era nulo *ab initio*, en lugar de anulable; (4) al ignorar por completo la aplicación a

este caso de la figura jurídica de la venta de cosa ajena; (5) al ignorar por completo la aplicación a este caso de las figuras jurídicas de prescripción adquisitiva y extintiva; y (6) al ignorar por completo la aplicación de la figura jurídica de los Principios Generales del Derecho y el de Confirmación de un contrato anulable. Por otro lado, el señor José De Pedro Martínez alega que el foro primario erró (1) al considerar una moción de sentencia sumaria que ya había sido adjudicada por una juez anterior del mismo tribunal, había sido objeto de un recurso ante el foro apelativo y se había determinado que procedía celebrar vista evidenciaria; y (2) al dictar sentencia sumaria a pesar de que, como determinó previamente el foro primario y este foro apelativo, procede celebrar una vista probatoria.

En oposición a estos dos recursos, el señor Pedro De Pedro Martínez y la señora De Pedro González argumentan que (1) la doctrina de *judicial estoppel* y de actos propios impide que el señor José De Pedro Martínez adopte una postura en un procedimiento judicial que contradiga una posición previamente asumida en el mismo caso o en un caso anterior; (2) que la existencia de una *Resolución* denegando la solicitud de sentencia sumaria parcial del señor De Pedro Montes y la señora Martínez de Andino no es óbice para que el foro primario resolviera la solicitud de sentencia sumaria parcial del señor Pedro José De Pedro Martínez y la señora De Pedro González; (3) que el foro primario no resolvió la solicitud de sentencia sumaria parcial de los demandantes y que así fue admitido por los demandados a pesar de aseverar lo contrario; (4) este Tribunal no expidió el recurso de *certiorari*; (5) que solo dos (2) miembros de la Sucesión de la señora Martínez Contreras consintieron al contrato en controversia; (6) que las

partes contratantes actuaron ilegalmente y en perjuicio de los coherederos, por lo cual hace el contrato en controversia nulo *ab initio*; (7) que la doctrina de venta de cosa ajena no es relevante a la controversia de marras; (8) que nuestro ordenamiento jurídico demuestra que los coherederos pueden incoar la acción de nulidad absoluta de un contrato más de dos décadas después de la transacción; (9) que la doctrina de prescripción adquisitiva ordinaria o extraordinaria no aplica por la señora De Pedro González no haber conocido del contrato hasta el 2013; y (10) que por esta misma coheredera nunca consentir a la transacción, cualquier confirmación del contrato hecha por el señor Pedro De Pedro Martínez no es suficiente para validar la misma.

Por otro lado, el señor Pedro De Pedro Martínez y la señora De Pedro González argumentan que el foro primario erró (1) al determinar que procede un crédito por las prestaciones habidas en pago de las acciones corporativas objeto del contrato de compraventa declarado radicalmente nulo, a pesar de que la parte compradora conocía el vicio del contrato y, por lo tanto, le aplica la doctrina de mala fe; (2) al no incluir que al señor De Pedro Montes y la señora Martínez de Andino les aplica la doctrina de mala fe en la contratación y, por lo tanto, al no ordenar que restituyan los caudales de las sucesiones todos los frutos, más los intereses, incluyendo, pero sin limitarse a, los dividendos recibidos por las acciones objeto del contrato de compraventa declarado nulo *ab initio*; y (3) al no imponerle el pago de honorarios por temeridad al señor De Pedro Montes y la señora Martínez de Andino.

En su oposición, señor José De Pedro Martínez argumenta que (1) el Tribunal de Apelaciones ya hizo expresiones sobre la necesidad

de dilucidar la validez del contrato en controversia mediante una vista evidenciaria; y (2) que las doctrinas de confirmación y de los propios actos demuestran que el señor Pedro De Pedro Martínez aceptó la titularidad del señor De Pedro Montes y la señora Martínez de Andino sobre las acciones en controversia, por lo cual no puede este alegar que el señor De Pedro Montes y la señora Martínez de Andino actuaron de mala fe y se le deben imponer honorarios por temeridad.

En estas circunstancias, vale recordar que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36 de *Procedimiento Civil* y tiene como finalidad la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. Véase Regla 36 de Procedimiento Civil, *supra*; *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023) (citando a *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964 (2022)). Así, la Regla 36.2 permite que cualquiera de las partes pueda solicitar que se dicte sentencia sumaria sobre la totalidad o sobre cualquier parte de una reclamación. Regla 36.2 de Procedimiento Civil, *supra*. Véase, también, *Torres Pagán et al. v. Mun. de Ponce et al.,* 191 DPR 583 (2014). A su vez, el peticionario debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. Regla 36.1 de Procedimiento Civil, *supra*; *Oriental Bank v. Caballero García*, 212 DPR 671 (2023) (citando a *Municipio de Añasco v. ASES et al.*, 188 DPR 307 (2013)). Véase, también, *Ramos Pérez v. Univisión,* 178 DPR 200 (2010) (citando a *Luan Invest. Corp. v. Rexach Const. et al.*, 152 DPR 652 (2000)).

Asimismo, la Regla 36 regula la oposición a que se dicte sentencia sumaria, la cual debe citar específicamente los párrafos enumerados que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3(b)(2) de Procedimiento Civil, *supra*. Como se puede apreciar, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018) (citando a *Rodríguez Méndez et al. v. Laser Eye et al.*, 195 DPR 769 (2016); *Ramos Pérez v. Univisión, supra*). En la medida en que meras afirmaciones no bastan para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados. Íd.; *Ramos Pérez v. Univisión*, *supra*.

En cuanto al estándar de revisión aplicable, el Tribunal de Apelaciones utilizará los mismos criterios que el foro de primera instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de Procedimiento Civil, *supra*. Debemos, por tanto, examinar *de novo* el expediente y verificar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma; luego, revisar si en realidad existen hechos materiales en controversia y, de encontrar que los hechos materiales realmente están incontrovertidos, revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas et al.*, 193 DPR 100 (2015).

Ahora bien, la doctrina de cosa juzgada procura poner fin a los litigios luego de los tribunales adjudicarlos de forma definitiva y, de este modo, garantizar la certidumbre y seguridad de los derechos declarados mediante las resoluciones judiciales y así evitar gastos adicionales al Estado y a los litigantes. *Presidential v. Transcaribe*, 186 DPR 263 (2012) (citando a *Worldwide Food Dis. v. Colón Bermúdez et al.*, 133 DPR 827 (1993)). Asimismo, una sentencia que adviene final y firme constituye cosa juzgada no solo en cuanto a todo lo que se alegó y se admitió en torno a la reclamación presentada, sino también en cuanto a todo asunto que pudo haberse planteado, siempre y cuando haya tenido la parte la oportunidad de ser oída. *Comisión v. González Freyre et al.*, 211 DPR 579 (2023) (citando a *Marrero Rosado et al. v. Marrero Rosado*, 178 DPR 476 (2010)).

Claro, la defensa de cosa juzgada no opera de manera automática. No debe aplicarse inflexiblemente, en particular, cuando al hacerlo se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público. *Meléndez Soberal v. García Marrerro*, 158 DPR 77 (2002) (citando a *Pagán Hernández v. UPR et al.*, 107 DPR 720 (1978); *Feliciano Ruiz et al. v. Alfonso Develop. Corp.*, 96 DPR 108 (1968); *Millán Soto v. Caribe Motors*, 83 DPR 494 (1961); *PRTC v. Unión Indep. Emp. Telefónicos*, 131 DPR 171 (1992)). Su presunción se activa cuando concurre la perfecta identidad de causa, cosas, partes y calidad en que lo fueron en un pleito anterior. *Ortiz Matías et al. v. Mora Development et al.*, 187 DPR 649 (2013) (citando al Art. 1204 del Código Civil de 1930, 31 LPRA ant. sec. 3343). En ese sentido, el requisito de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en torno a la

cuestión planteada. *Presidential v. Transcaribe*, *supra.* Al determinar si media identidad de causa de acción es necesario evaluar si ambas reclamaciones surgen de la misma transacción o núcleo de hechos. Íd. Debe observarse, de su parte, que la cosa, objeto o materia sobre la cual se ejercita la acción son las mismas, aunque se haya disminuido o alterado. Íd. En este contexto, las partes significan quienes intervienen en el proceso, a nombre y en interés propio, y quienes resultarían directamente afectados por la excepción de la cosa juzgada. Íd.

Asimismo, los foros primarios deben resistirse a alterar sus pronunciamientos dentro de un mismo caso, excepto cuando se convenza de que los mismos son erróneos. *Torres Cruz et al. v. Mun. de San Juan et al.*, 103 DPR 217 (1975). Tales determinaciones judiciales que constituyen la ley del caso incluyen todas las cuestiones finales consideradas y decididas por el tribunal primario, de esa manera obligando tanto al tribunal de instancia como al que las dictó, si el caso vuelve ante su consideración. *Cacho Pérez v. Hatton Gotay et al.*, 195 DPR 1 (2016) (citando a *Félix v. Las Haciendas*, 165 DPR 832 (2005)). Sin embargo, un segundo juez no está obligado a mantener incólume la decisión de un primer juez de igual nivel dentro del mismo caso si dicha determinación resulta claramente injusta. Íd. (citando a 1B Moore's Federal Practice 451 *et seq.*; J.W. Moore y R.S. Oglebay, *The Supreme Court, Stare Decisis and Law of the Case*, 21 Texas L. Rev. 514 (1943)).

Por otra parte, la denegación de un auto de *certiorari* por un tribunal apelativo no prejuzga los méritos del asunto o la cuestión planteada, es decir, no implica posición alguna de dicho foro respecto a los méritos de la causa sobre la cual trata dicho recurso. *García*

*Morales et al. v. Padró Hernández et al.*, 165 DPR 324 (2005); *Núñez Borges v. Pauneto Rivera*, 130 DPR 749 (1992). La denegatoria del foro apelativo es meramente la negación para revisar, en determinado momento, una decisión emitida por un tribunal de instancia. A esos efectos, los méritos pueden ser reproducidos nuevamente mediante el correspondiente recurso de apelación una vez se resuelva el pleito. *Núñez Borges v. Pauneto Rivera*, *supra*.

En cuanto a la doctrina de actos propios o *estoppel*, nuestro ordenamiento dispone que de un tribunal rehusarse a fallar a pretexto de silencio, obscuridad o insuficiencia de la ley, o por cualquier otro motivo, este incurrirá en responsabilidad. Art. 7 del Código Civil de 1930, 31 LPRA ant. sec. 7.[1] De no existir una ley aplicable al caso ante él, el tribunal resolverá conforme a equidad, basándose en la razón natural de acuerdo con los principios generales del derecho y los usos y costumbres aceptados y establecidos y, por tanto, nadie puede ir en contra de sus propios actos. Íd.; *Comisionado de Seguros v. Univeral Ins. Company*, 187 DPR 164 (2012) (citando a *Vivoni Farage v. Ortiz Carro*, 179 DPR 990 (2010); *Int'l General Electric v. Concrete Builders*, 104 DPR 971 (1976)). De tal manera, se salvaguardan los intereses esenciales de las partes y se protege la confianza depositada en los actos, el interés social y la consecución de un ideal de justicia. *Carmona Sánchez v. BSN*, 2024 TSPR 65 (citando a *Alonso Piñero v. UNDARE*, 199 DPR 32 (2017); *Int'l General Electric v. Concrete Builders*, *supra*; E. Fontánez Torres, *Obligaciones y contratos*, 75 Rev. Jur. UPR 245 (2006)). A través de la buena fe se protege la confianza

---

[1] Por razón del testamento y el contrato en controversia haberse otorgado antes del 2020, se utilizará el Código Civil del 1930 para fundamentar nuestros criterios.

que deposita una parte quien ha confiado razonablemente en una apariencia creada por otra. *Comisionado de Seguros v. Univeral Ins. Company*, *supra* (citando a *Int'l General Electric v. Concrete Builders*, *supra*; J. Puig Brutau, *Estudios de derecho comparado: la doctrina de actos propios*, Barcelona, Ed. Ariel, 1951, págs. 106–107).

Claro, se aplicará la doctrina de actos propios siempre y cuando concurran los siguientes factores: (1) una conducta determinada de un sujeto; (2) que haya engendrado una situación aparente y susceptible de influir en la conducta de los demás, contraria a la realidad; y (3) que sea base de la confianza de otra parte que haya procedido de buena fe y que, en consecuencia, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Carmona Sánchez v. BSN*, *supra* (citando a *Alonso Piñero v. UNDARE*, 199 DPR 32 (2017); *Int'l General Electric v. Concrete Builders*, *supra*; Fontánez Torres, *supra*).

Por otro lado, surge que la prescripción es una figura que extingue un derecho debido a que una parte no lo ejerce en un período determinado. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012). De esta manera, la prescripción extintiva es de naturaleza sustantiva, no procesal, y se rige por los principios del Código Civil. *Serrano Rivera v. Foot Locker Retail Inc.*, 182 DPR 824 (2011). El objetivo de los términos prescriptivos es castigar la inercia y estimular el ejercicio rápido de las acciones, promoviendo de ese modo la seguridad en el tráfico jurídico y la estabilidad de las relaciones jurídicas. *Campos v. Cía. Fom. Ind.*, 153 DPR 137 (2001). Sin embargo, la prescripción de las acciones se interrumpe de ordinario por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor

y por cualquier acto de reconocimiento de la deuda por el deudor. Art. 1873 del Código Civil de 1930, 31 LPRA ant. sec. 5303.

Cónsono con lo anterior, nuestro ordenamiento permite la adquisición del dominio y de todos los derechos reales en virtud de la prescripción adquisitiva o usucapión, por lo cual es necesario que la cosa o derecho sea susceptible de apropiación por un tiempo determinado y según las condiciones que dicta la ley. Arts. 1830 y 1836 del Código Civil de 1930, 31 LPRA ant. secs. 5241, 5247. Véase, también, *Bravman, González v. Consejo de Titulares*, 183 DPR 827 (2011) (citando J.R. Vélez Torres, *Los bienes y los derechos reales*, Madrid, Ed. Offirgraf, 1983, T. II, pág. 263). En caso de bienes muebles, el dominio sobre la misma prescribe por la posesión no interrumpida de seis (6) años cuando el individuo posee el bien inmueble de forma pública, pacífica, en concepto de dueño, de mala fe y sin justo título. Arts. 1840, 1841 y 1855 del Código Civil de 1930, 31 LPRA ant. secs. 5261, 5262 y 5276; *Bravman, González v. Consejo de Titulares*, *supra*; *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154 (2005) (citando al Art. 1859 del Código Civil de 1930, 31 LPRA ant. sec. 5280; *Dávila v. Córdova*, 77 DPR 136 (1954)). Tal justo título debe entenderse como aquel que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate, y cuya existencia nunca se presumirá. Arts. 1852 y 1854 del Código Civil de 1930, 31 LPRA ant. sec. 5273, 5275. La interrupción puede producirse por la citación judicial hecha al poseedor, aunque sea por mandato de tribunal o juez incompetente. Íd., ant. sec. 5266.

Ahora bien, nuestro ordenamiento jurídico enfatiza la percepción del testamento como un negocio jurídico solemne, unilateral,

personalísimo y revocable. *Sucn. Caragol Rabel v. Registradora de la Propiedad*, 2008 TSPR 112. La voluntad que aparece en el testamento es "una de las manifestaciones—quizás la más pura—del principio de la autonomía de la voluntad". *Torre Ginés v. ELA*, 118 DPR 436, 445 (1987) (citando a M. García Amigó, *Interpretación del Testamento*, 53 Rev. Der. Privado 931 (1969)). Más aun, la sucesión testamentaria se defiere a la voluntad manifestada en el testamento, y a falta de éste, por lo dispuesto en la ley. Art. 604 del Código Civil de 1930, 31 LPRA ant. sec. 2086; Véase, *Tous Rodríguez v. Sucn. Tous Oliver*, 2023 TSPR 106. Más adelante, el Artículo 624 del Código Civil añade que toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, y en caso de duda, se observará lo que parezca más conforme a la intención del testador, según el tenor del mismo testamento. Art. 624 del Código Civil de 1930, 31 LPRA ant. sec. 2129. Véase, además, *Licari v. Dorna*, 148 DPR 453 (1999).

Desde luego, una comunidad hereditaria se constituye cuando existen dos o más llamamientos a la universalidad de la herencia y comprende todas las relaciones jurídicas patrimoniales del difunto excepto aquellas que se extinguen con la muerte del causante. *Vega Montoya v. Registrador*, 179 DPR 80 (2010) (citando a *Soc. de Gananciales v. Registrador*, 151 DPR 315 (2000); *Cintrón Vélez v. Cintrón De Jesús*, 120 DPR 39 (1987)). No obstante, por el Código Civil de 1930 carecer de disposiciones específicas que regulen la comunidad hereditaria, nuestra jurisprudencia resolvió que tal comunidad se regirá por el siguiente orden de prelación de fuentes legales: (1) el Código Civil de 1930; (2) la voluntad del causante; (3) las disposiciones que le sean aplicables sobre división de la herencia; y

(4) las disposiciones generales sobre comunidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad. Íd. (citando a *Kogan v. Registrador*, 125 DPR 636 (1990); *Cintrón Vélez v. Cintrón De Jesús*, *supra*).

Por tanto, durante la vigencia de la comunidad hereditaria, los herederos van a ser titulares de una cuota alícuota o abstracta sobre todos los bienes que formen parte del caudal relicto, y no sobre bienes particulares dentro la herencia. *In re Torres Rivera*, 204 DPR 1 (2020) (citando a *Kogan v. Registrador*, *supra*). Dicha condición dejara de existir tan pronto se liquide el patrimonio del causante y se adjudiquen a los herederos los bienes particulares que les corresponden de la herencia. *Vega Montoya v. Registrador*, *supra* (citando a *Arrieta v. Chinea Vda. de Arrieta*, 139 DPR 525 (1995); *Cintrón Vélez v. Cintrón De Jesús*, *supra*). A esos efectos, mientras perdure la comunidad hereditaria, ningún heredero podrá reclamar un derecho específico sobre un bien en particular, sino solamente sobre la totalidad del caudal relicto. Íd. (citando a *Soc. de Gananciales v. Registrador*, *supra*; *Kogan v. Registrador*, *supra*; *Cintrón Vélez v. Cintrón De Jesús*, *supra*).

Sin embargo, nuestro ordenamiento permite que los herederos enajenen su participación abstracta en la herencia antes de realizarse la partición y extinción de la comunidad hereditaria. *In re Torres Rivera*, *supra* (citando a *Vega Montoya v. Registrador*, *supra*). De un heredero querer vender o gravar un bien específico de la herencia antes de la partición, este deberá conseguir el consentimiento unánime de todos los coherederos de la comunidad hereditaria. Íd. (citando a *Gierbolini v. Registrador*, 151 DPR 315 (2000); *Kogan v. Registrador*, *supra*).

Cónsono con lo anterior, cuando un matrimonio se disuelve mediante el divorcio, la nulidad o la muerte de uno de los cónyuges, se crea una comunidad de bienes postganancial y la cual existirá hasta que la misma sea liquidada o dividida. *LSREF2 Island Holdings v. Ashford RJF et al.*, 201 DPR 1026 (2019) (citando a Arts. 95, 1315 y 1328 del Código Civil de 1930, 31 LPRA ant. sec. 301, 3681 y 3712; *BL Investment v. Registrador*, 181 DPR 5 (2011); *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967 (2010)). Similar a la comunidad hereditaria, los comuneros en la comunidad de bienes postganancial en caso de fallecimiento de uno de los cónyuges —es decir, el cónyuge superviviente y los herederos del cónyuge fallecido— ostentan una cuota abstracta sobre la antigua masa ganancial, en vez de un bien concreto. Íd. (citando a *BL Investment v. Registrador*, *supra*; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2.ª ed., Madrid, Ed. EDERSA, 1999, T. XVIII, Vol. II, págs. 587–591; A. de Cossio y Corral, *Tratado práctico y crítico de Derecho Civil*, Madrid, Ed. Instituto Nacional de Estudios Jurídicos, 1963, pág. 248).

Sin embargo, antes de liquidar la comunidad de bienes postganancial, es necesario determinar cuáles bienes son privativos y cuáles son gananciales. Íd. (citando a *Montalván v. Rodríguez*, 161 DPR 411 (2004)). Asimismo, cuando coincidan una comunidad de bienes postganancial y una comunidad hereditaria, se debe primero liquidar la comunidad de bienes postganancial. Íd. (citando a *Méndez v. Ruiz Rivera*, 124 DPR 579 (1989); E. González Tejera, *Derecho sucesorio puertorriqueño*, San Juan, Ed. de la Universidad de Puerto Rico, 2001, Vol. I, pág. 491).

En vista de ello, debemos recordar que el Código Civil de 1930 dispone que la existencia del contrato depende de la presencia del (1) consentimiento de los contratantes; (2) un objeto cierto que sea materia del contrato; y (3) una causa de la obligación que se establezca. Íd., ant. sec. 3391. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre y cuando no sean contrarios a la ley, moral o al orden público. Íd., ant. sec. 3372. Asimismo, un contrato solo produce efecto entre las partes que los otorgan y sus herederos, salvo que los derechos y las obligaciones que producen del contrato no sean transmisibles por su naturaleza, por pacto o por disposición de la ley. Íd., ant. sec. 3374. No se podrá celebrar un contrato sobre la herencia futura, menos aquellos cuyo objeto sea practicar entre vivos la división de un caudal conforme al Artículo 1009, es decir, cuando el testador hiciere, por acto entre vivos, la partición de sus bienes en cuanto no perjudique a la legítima de los herederos forzosos. Íd., ant. secs. 2875, 3421. Igualmente será nulo todo consentimiento que se prestó por error, violencia, intimidación o dolo. Íd., ant. sec. 3404. Dicho error invalida el consentimiento cuando el mismo recae sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo. Íd., ant. sec. 3405.

Ahora bien, hay circunstancias que hacen un contrato ineficaz y, en efecto, el mismo puede adolecer de nulidad relativa o de nulidad absoluta o radical, conocida como la nulidad *ab initio* y el cual se aplica cuando el contrato se perfecciona contra la ley. *Rosario Rosado v. Pagan Santiago*, 196 DPR 180 (2016). Aunque un contrato expresa todos los elementos fundamentales para validar el mismo, este puede

ser anulado siempre que adolezca de alguno de los vicios que invalidan con arreglo a la ley, a menos que el contrato se confirme posteriormente. Art. 1252 del Código Civil de 1930, 31 LPRA ant. sec. 3511. Dicha confirmación puede hacerse expresa o tácitamente, esta última ocurriendo cuando con conocimiento de la causa de nulidad y habiendo ésta cesado, el que tuviera derecho a invocarla ejecutase un acto que implique necesariamente la voluntad de renunciarla. Íd., ant. sec. 3522.

Para que la referida confirmación sea válida, tienen que concurrir los siguientes tres requisitos: (1) que se haga la confirmación por la persona que podría ejecutar la acción de nulidad; (2) que sea con conocimiento del vicio del contrato; y (3) que el vicio o causa de nulidad haya desaparecido. *Acosta & Rodas v. PRAICO*, 112 DPR 583 (1982). No obstante, todo contrato nulo *ab initio* es inexistente en Derecho desde el momento en que se otorga y no puede ser objeto de confirmación ni de prescripción sanatoria. *Gil Enseñat v. Marini Román*, 167 DPR 553 (2006) (citando a J.L. Lacruz Berdejo y F.A. Sancho Rebudilla, *Derecho de Familia*, Barcelona, Librería Bosch, 1966, pág. 129); *Ríos et als. v. Mun. de Isabela et als.*, 159 DPR 839 (2003) (citando a *Guzmán v. Guzmán*, 78 DPR 673 (1955)).

De querer invocar el derecho de solicitar la nulidad del contrato, el mismo se hará dentro de los cuatro (4) años siguientes a la consumación del contrato. Art. 1253 del Código Civil de 1930, 31 LPRA ant. sec. 3512. Dicha consumación es el cumplimiento del fin para que se constituyó el contrato o la realización y efectividad de las prestaciones derivadas del mismo y que, en efecto, extingue el vínculo contractual. *Acosta & Rodas et al. v. PRAICO*, *supra* (citando a J.

Castán Tobeñas, *Derecho Civil español común y foral*, 11.ª ed., Madrid, Ed. Reus, 1974, T. III, págs. 523-525).

Dentro de estas circunstancias, cuando un contrato se declara nulo, los contratantes deberán restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio de los intereses. Art. 1255 del Código Civil de 1930, 31 LPRA ant. sec. 3514. Tales frutos incluyen los dividendos, aquellas ganancias de una corporación que se distribuyen entre sus accionistas en forma de pagos. *Lynch v. Hornby*, 247 US 339 (1918); *Santiago Aponte et al. v. Rodríguez Martínez et al.*, 181 DPR 204 (2011). No obstante, si dicha nulidad proviene de una causa u objeto ilícito que no constituye delito ni falta y ambos contratantes son culpables, ninguno de ellos podrá repetir o solicitar la devolución de lo que hubieran dado en virtud del contrato, ni reclamar el cumplimiento de lo que el otro hubiese ofrecido. Íd., ant. sec. 3517. La culpabilidad de ambos contratantes, en vez de uno solo, proviene del conocimiento que tenía cada uno de las circunstancias de las que deriva la ilicitud. *Sánchez Rodríguez et al. v. López Jiménez et al.*, 116 DPR 172 (1985) (citando a J. Delgado Echeverría, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1981, T. XVII, Vol. 2, págs. 307-309). A esos efectos, cuando ambas partes de un negocio jurídico ilícito conocían que tal defraudaría a un heredero, se privará de ambas partes el derecho a solicitar la repetición o devolución de lo ya entregado. Íd.

Por último, nuestro ordenamiento establece que cuando cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el

tribunal entiende corresponden a tal conducta. *González Ramos et al. v. Pacheco Romero et al.*, 209 DPR 138 (2022) (citando la Regla 44.1(a) de Procedimiento Civil, *supra*). Dicha temeridad aplica cuando una parte (1) alargue innecesariamente un pleito; o (2) interponga pleitos frívolos que obliguen a la parte contraria a incurrir en gastos innecesarios o gestiones evitables. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022) (citando a *Nieves Huertas et al. v. ELA I*, 189 DPR 611 (2013); *Domínguez v. GA Life*, 157 DPR 690 (2002)).

Asimismo, nuestro Tribunal Supremo ha dispuesto que existe temeridad cuando (1) una parte contesta una demanda y niega responsabilidad total, aunque se acepte posteriormente; (2) una parte se defiende injustificadamente de la acción; (3) una parte considera que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir su responsabilidad; (4) dicha parte se arriesga a litigar un caso del que se desprende prima facie su responsabilidad; y (5) esta misma niega un hecho que le conste como cierto a quien hace la alegación. *Fernández v. San Juan Cement Co.*, 118 DPR 713 (1987) (citando a *Rodríguez Cancel v. AEE*, 116 DPR 443 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721 (1984); *Abréu Román v. Rivera Santos*, 92 DPR 325 (1965); *Montañez Cruz v. Metro. Cons. Corp.*, 87 DPR 38 (1962); *Mercado v. American Railroad Co.*, 61 DPR 228 (1943); *Reyes v. Aponte*, 60 DPR 890 (1942)). Claro, la temeridad es improcedente en litigios que encierran planteamientos complejos y novedosos aun no resueltos en nuestra jurisdicción y cuando la parte contra la cual se trata de aplicar el principio posee argumentos para rebatir lo que sostiene la parte contraria. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR

163 (2022) (citando a *Gómez Márquez et al. v. El Oriental*, 203 DPR 783 (2020); *Blanco Matos v. Colón Mulero*, 200 DPR 398 (2018); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012)).

Por su naturaleza, la imposición de honorarios de abogados como sanción por temeridad pueden determinarse en cualquier tipo de acción judicial. *González Ramos et al. v. Pacheco Romero et al.*, *supra* (citando a *Elba ABM v. UPR*, 125 DPR 294 (1990)). No obstante, tal determinación descansa en la sana discreción del foro primario, por lo cual un foro apelativo no intervendrá a menos que se demuestre que la adjudicación monetaria es constitutiva de un claro abuso de discreción. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022) (citando a *Rodríguez de Oller v. TOLIC*, 171 DPR 293 (2007)).

En el presente caso, el Tribunal de Primera Instancia actuó correctamente al declarar el contrato de compraventa en controversia nulo *ab initio*. Del expediente se desprende como hecho incontrovertido que las partes contratantes conocían de la falta de liquidación de la comunidad hereditaria de la Sucesión de la señora Martínez Contreras y, a pesar de eso, perfeccionaron un contrato ilegal. Además, tal como nuestro ordenamiento demuestra, los contratos se consuman cuando finalice todas las prestaciones acordadas entre los contratantes, por lo cual el contrato en controversia se cumplió en su totalidad cuando el señor De Pedro Montes y la señora Martínez de Andino hicieron su último pago el 5 de septiembre de 2018. Así las cosas, el señor Pedro De Pedro Martínez presentó la demanda de marras 19 de septiembre de 2018, dentro de los cuatro (4) años dispuestos por el Código Civil de 1930 y, por efecto, el mismo estaba legitimado para solicitar la nulidad del contrato. Además, la doctrina de la usucapión contractual es

inaplicable por el señor De Pedro Montes y la señora Martínez de Andino haber fallado en poseer los derechos sobre las acciones en controversia por el tiempo dispuesto por ley. Por tanto, ante un contrato nulo *ab initio*, se deben devolver las acciones —más los dividendos e intereses provenientes de los mismos— a la comunidad hereditaria de la Sucesión de la señora Martínez Contreras.

No obstante, el Tribunal de Primera Instancia erró al imponer a favor del señor De Pedro Montes y la señora Martínez de Andino un crédito por las prestaciones habidas en pago de las acciones corporativas. Tal como nuestro ordenamiento dispone, los contratos nulos *ab initio*, y en el cual ambas partes conocían de la ilicitud de la causa u objeto, privan a dichas partes de poder solicitar repetición o devolución de lo ya entregado, por lo cual el señor De Pedro Montes y la señora Martínez de Andino no tienen derecho a que se le reembolsen por lo que estos pagaron por las acciones corporativas.

En cuanto a los otros argumentos presentados ante este Tribunal, el expediente demuestra que dos juezas distintas resolvieron una solicitud de sentencia sumaria de diferentes partes litigiosas, por lo cual la Hon. Teresita M. Mercado Vizcarrondo no estaba obligada a interpretar la moción del señor Pedro De Pedro Martínez y la señora De Pedro González en la misma manera que los hizo la Hon. Nydia del C. Ríos Jiménez con la moción del señor De Pedro Montes, la señora Martínez de Andino y la SLG Montes-Martínez. Además, las resoluciones apelativas denegando expedir un auto de *certiorari* no conllevan una evaluación en sus méritos de la controversia que se les fue planteada y, por efecto, el foro primario no tenía ninguna obligación de celebrar vista en su fondo.

Finalmente, no advertimos que el Tribunal de Primera Instancia haya actuado erróneamente al no imponer pagos de honorarios de abogados contra el señor De Pedro Montes y la señora Martínez de Andino por conducta temeraria. El foro primario tiene la discreción de adjudicar los referidos pagos, más que del expediente no se desprende que el señor De Pedro Montes y la señora Martínez de Andino hayan actuado de una manera que alargara innecesariamente el pleito o que demostrara que estos estaban defendiendo injustificadamente sus argumentos. Por tanto, no hay razón por la cual debamos imponer a alguna parte los pagos de honorarios de abogados por temeridad.

Por los fundamentos que anteceden, confirmamos en parte y revocamos en parte la *Sentencia Parcial Nunc Pro Tunc* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones